UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

-----------------------------------------------------------------X
MARK DAVIS, *et. al.*,                          :
                                                :
                          Plaintiffs,           :   Civil Action No.: 3:17-cv-820-J-
                                                :   34PDB
               v.                               :
                                                :   **OPPOSITION TO DEFENDANTS'**
JULIE JONES, *et al.*,                          :   **MOTION TO DISMISS AMENDED**
                                                :   **COMPLAINT**
                          Defendants.           :
-----------------------------------------------------------------X

<u>**PLAINTIFFS' OPPOSITION TO**</u>
<u>**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**</u>

Linda McDermott (SBN 102857)
**TRIAL COUNSEL**
Martin J. McClain (SBN 754773)
McCLAIN & MCDERMOTT P.A.
141 NE 30th Street
Wilton Manors, FL 33334-1064
Tel. (850) 322-2172
Fax. (954) 564-5412
Lindamcdermott@msn.com

Seth A. Rosenthal
Claire Wheeler
VENABLE LLP
600 Massachusetts Avenue NW
Washington, DC 20001
Tel. (202) 344-4741
Fax. (202) 344-8300
Sarosenthal@venable.com
Cmwheeler@venable.com

Evan T. Shea
Matthew T. Shea
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Tel. (410) 244-7400
Fax. (410) 244-7742
Etshea@venable.com
Mtshea@venable.com

*Attorneys for Plaintiffs Mark Davis, Mark Geralds, Jesse Guardado, Joseph Jordan, Robert Rimmer, Steven Stein, Jason Stephens, and Gary Whitton*

## <u>INTRODUCTION</u>

Plaintiffs are inmates living on death row in two Florida prisons.  Under the Florida Department of Corrections ("FDOC") practice of automatically placing all death row inmates in permanent solitary confinement, Plaintiffs have each spent every day for the past four to 30 years locked alone in small, concrete, windowless cells, often for 24 hours a day.  Defendants Julie Jones, Barry Reddish and Kevin Jordan (collectively, "Defendants") forbid Plaintiffs all but a single phone call per month, provide Plaintiffs three short showers a week and minimal opportunity for exercise, and deny Plaintiffs all vocational, recreational and educational programming. Communication with other inmates, prison staff and the outside world is almost non-existent.

These stark, isolative conditions have created an unreasonable risk of serious harm to Plaintiffs' psychological and physical health and safety, and have in fact caused such harm. Deprived of the basic human need for social interaction and environmental stimulation, Plaintiffs are in danger of suffering, and have suffered, depression, anxiety, paranoia, hallucinations, social withdrawal, irrational anger and suicidal ideation, among other things.  Defendants have acted with deliberate indifference to both the risk and the reality of this extreme anguish.  They adhere to their practice despite years of well-publicized scientific research establishing the perils of prolonged solitary confinement; corresponding pronouncements about these perils from human rights organizations, courts, and other prison systems that have adopted reforms; FDOC's own, implicit recognition of these perils in its policies restricting the amount of time that non-death row inmates may spend in solitary confinement; and the injuries endured by Plaintiffs themselves.

Plaintiffs allege that Defendants' conduct violates the Eighth Amendment's prohibition on cruel and unusual punishment and the Fourteenth Amendment's due process guarantee.  In their Motion to Dismiss, Defendants argue that Plaintiffs have failed to exhaust their administrative

remedies for challenging Defendants' practices and also fail to state a claim for relief.  None of these arguments has merit.  Plaintiffs faithfully exhausted their administrative remedies before filing suit by following the grievance procedures set forth in FDOC regulations; nothing more is required.  Moreover, given the particularized factual allegations made in the complaint, Plaintiffs have plainly stated valid constitutional claims at the pleading stage.  Indeed, another district court recently found that Virginia death row inmates living in almost identical conditions not only stated a viable claim at the pleading stage, but were entitled to summary judgment on the merits. *See Porter v. Clarke*, 290 F. Supp. 3d 518 (E.D. Va. 2018).  Defendants' Motion to Dismiss should be denied.  Plaintiffs must be given an opportunity to make their case.

## FACTUAL BACKGROUND

*Defendants' Practice of Automatic Solitary Confinement.*   Plaintiffs are inmates on Florida's death row.  ECF No. 41 ¶ 1.  The FDOC requires "single-cell special housing"—*i.e.*, solitary confinement—for any person sentenced to death.  *Id.* ¶ 23; Fla. Admin. R. 33-601.830(1)(a).  As soon as an individual is sentenced to death and transported to death row at Union Correctional Institution ("UCI") or Florida State Prison ("FSP"), he is placed permanently and indefinitely in solitary confinement.  *Id.*  Defendants have never moved any death row inmate from "single-cell special housing" to general population or any other form of less restrictive housing.  *Id.* ¶ 24.  As a result, Plaintiffs Mark Davis, Mark Geralds, Steven Stein, Gary Whitton, Robert Rimmer, and Jesse Guardado have spent over 31 years, 27 years, 26 years, 25 years, 19 years, and 12 years in solitary confinement at UCI, respectively, while Plaintiffs Joseph Jordan and Jason Stephens have spent four years and 20 years, respectively, in solitary confinement at FSP.  *Id.* ¶¶ 12-19.  Each Plaintiff will remain in solitary confinement until either he receives relief from his death sentence or is executed.  *Id.* ¶ 2.

***Conditions of Confinement at UCI and FSP.***  The conditions on death row are bleak. Plaintiffs are housed alone in cells the size of a parking space (9' x 7' at UCI; 9.5' by 6' at FSP). *Id*. ¶¶ 27, 44.  Cell walls are hot to the touch, there is minimal ventilation, and water in the cells does not get cold.  *Id*. ¶¶ 29, 46.  Most days, Plaintiffs spend 24 hours alone in their cells, with virtually no human contact, unable even to see other inmates.  *Id*. ¶¶ 30, 40, 47, 59.  Plaintiffs eat every meal in their cells and are allowed a single 15 minute phone call per month.  *Id*. ¶¶ 31, 38, 48, 57.  They are not offered self-improvement programs. *Id*. ¶¶ 39, 58.  When Plaintiffs are briefly permitted to leave their cells for three showers per week lasting five to 10 minutes and visits to the law library, they are required to go alone and are unable to interact with other inmates.  *Id*. ¶¶ 32, 37, 49, 56.  The only time Plaintiffs can interact with others is during exercise period, but exercise is permitted only twice a week, and even trips to the yard are often shortened or cancelled.  *Id*. ¶¶ 34, 52.  Plaintiffs have spent nearly the entire period of their confinement in total isolation.

***Unreasonable Risk of Serious Harm Caused by Permanent Solitary Confinement.***  The known health risks of depriving prisoners of the basic human need for social interaction and environmental stimulation through prolonged solitary confinement are severe.  Because of their permanent isolation, Plaintiffs and class members are in danger of suffering psychological and physical infirmities like appetite and sleep disturbances, anxiety, panic, rage, loss of control, paranoia, hallucinations, self-mutilation, progressive inability to tolerate ordinary stimuli, depression, lethargy and headaches.  *Id.* ¶ 81.  Indeed, Plaintiffs have suffered some, if not all, of these psychological and physical infirmities and others.  *Id.* ¶¶ 82, 88.  As a result, Plaintiffs have struggled to acclimate to settings where others are present, and have developed defensive mechanisms that deaden feelings and emotions.  *Id.* ¶¶ 83, 85.

***Conditions in FDOC Prisons Outside Death Row.***  The conditions in FDOC facilities

outside death row differ dramatically from those on death row.  Non-death row inmates have the opportunity to socialize and eat with other prisoners, hold jobs, make phone calls, and participate in educational, vocational and self-improvement programs.  *Id.* ¶¶ 62-66 (citing Fla. Admin. R. 33-602.101(2)(b); 33-601.201; 33-501.301; 33-204.003; 33-602.205(2)(a); 33-602.205(1)).  They also enjoy procedural protections that death row inmates do not.  Non-death row inmates are classified and assigned to facilities and housing units based on a variety of factors.  *Id.* ¶ 25 (citing Fla. Admin. R. 33-601.210(1)(a).  Non-death row inmates are only placed in harsh conditions similar to those on death row after they have demonstrated non-compliant behavior while in prison or have demonstrated while in prison that their safety in general population is at serious risk.  *Id.* (citing Fla. Admin. R. 33-601.800, 33-602.220, 33-602.222).  Further, they are subject to these conditions only after being given an opportunity to challenge their placement.  *Id.* (citing Fla. Admin. R. 33-601.304 – 308; 33-601.800(3)).  And even when placed in these conditions, non-death row inmates are generally precluded from having to serve more than a short, finite period, and they receive routine reviews to determine if continued placement is warranted.  *Id.* ¶¶ 25, 67-72 (citing Fla. Admin. R. 33-602.222(8); 33-601.314; 33-602.220(1), (3); 33-602.221(1)(a); 33-602.221(8); 33-601.800(16)).

***Defendants' Deliberate Indifference to the Harms Wrought by Solitary Confinement.***
The unreasonable health risks that prolonged solitary confinement create are widely known.  Social scientists have long observed the devastating psychological and physical effects of prolonged solitary confinement.  *Id.* ¶ 73; *Davis v. Ayala*, 135 S. Ct. 2187, 2210 (2015) (Kennedy, J., concurring) ("[R]esearch still confirms what this Court suggested over a century ago: Years on end of near-total isolation exacts a terrible price.").  Accordingly, a number of prison systems have eliminated the practice.  ECF No. 41 ¶ 89.  As far back as the 19th century, courts, too, have

recognized the severe psychological damage prolonged solitary confinement causes. *Id.* ¶¶ 74-78; *In re Medley*, 134 U.S. 160, 170 (1890) (solitary confinement bears "a further terror and peculiar mark of infamy" and, "even [after] a short [period,]" left "[a] considerable number of [] prisoners" in "a semi-fatuous condition[;] others became violently insane; others, still, committed suicide") (citation and quotation marks omitted). International human rights groups have also condemned prolonged solitary confinement as a human rights abuse equivalent to torture. ECF No. 41 ¶ 80.

Defendants have ignored all of this evidence of the harms of prolonged solitary confinement, as well as the psychological and physical infirmities that Plaintiffs themselves have suffered while in Defendants' custody and care. *Id.* ¶¶ 90-91. Indeed, Defendants have adhered to a strict practice of permanent solitary confinement for death row inmates even though the FDOC's *own* regulations recognize the attendant harms. The regulations allow disciplinary and administrative confinement of non-death row inmates for only short periods, and require close, periodic review of recommendations for confinement beyond what is prescribed. *Id.* ¶¶ 92-93.

## STANDARD OF REVIEW

Defendants have moved to dismiss for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). When considering a motion under Rule 12(b)(6), the court must "'accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *West v. Warden*, 869 F.3d 1289, 1296 (11th Cir. 2017) (quoting *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

<u>**ARGUMENT**</u>

**I.    Plaintiffs Have Exhausted All Required Administrative Remedies.**

Plaintiffs have satisfied the only exhaustion requirement of the Prison Litigation Reform Act ("PLRA") by following the three-step grievance procedure set forth in Fla. Admin. R. 33-103. *See* ECF No. 41 ¶¶ 94-96.  Defendants' argument that Plaintiffs were also required to file a petition to initiate rulemaking to satisfy the exhaustion requirement is wholly unsupported.

The PLRA requires prisoners to exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a).  The Supreme Court has held that "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules.' . . . rules that are defined not by the PLRA, but by *the prison grievance process* itself."  *Jones v. Block*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)) (emphasis added); *Woodford*, 548 U.S. at 95.  While "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system," the Supreme Court has said that "it is the prison's requirements . . . that define the boundaries of proper exhaustion."  *Jones*, 549 U.S. at 218.  In the Eleventh Circuit, this means an inmate incarcerated in state prison "must first comply with *the grievance procedures established by the state department of corrections*."  *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999)) (emphasis added).

In Florida, the prison "grievance procedure" consists of three steps:

> An inmate must first file an "informal grievance . . . to the staff member who is responsible in the particular area of the problem." Fla. Admin. Code Ann. § 33-103.005(1).  The second step requires the inmate file a formal grievance with the warden.  *Id.* § 33-103.006(1)(a).  If the inmate is unsuccessful at this point, he may submit an appeal to the Secretary of the DOC.  *Id.* § 33-103.007.

*Kozuh v. Nichols*, 185 F. App'x 874, 877 (11th Cir. 2006); *Oliver v. Whitehead*, 2017 WL 26860, at *4 (M.D. Fla. Jan. 3, 2017) (quoting *Kozuh*, 185 F. App'x at 877).  The "grievance procedures established by the [Florida] state department of corrections," *Bingham*, 654 F.3d at 1175, do *not* include filing a petition to initiate rulemaking.  As one district court said this year:

> [FDOC] . . . has not included a Petition to Initiate Rulemaking in its prison grievance process . . . .  There is no mention of a Petition to Initiate Rulemaking in Chapter 33–103 (entitled "Inmate Grievances").  There is also nothing in the Inmate Orientation Handbook to suggest that FDC's inmate grievance process encompasses a Petition to Initiate Rulemaking.  In fact, the Handbook advises inmates that FDC's grievance process "can be found in Rule 33-103, Florida Administrative Code."

*Sims v. Jones*, 2017 WL 188138, at *1 (N.D. Fla. Jan. 17, 2017).  Thus, as two district courts in Florida have said, filing a petition to initiate rulemaking is unnecessary to exhaust a claim under the PLRA; following the three-step process is all that is required. *Id.*; *Torres v. Florida Dep't of Corr.*, 2015 WL 9854803, at *2 (N.D. Fla. Dec. 30, 2015).

Defendants' disagreement with these two decisions and the governing precedent in *Jones, Woodford* and *Bingham* is based almost entirely on a footnote from an unpublished decision that Defendants misconstrue.[1]  In *Smith v. Conner*, 2014 WL 299099, at *4 (M.D. Fla. Jan. 28, 2014), an inmate argued that defendants violated the Eighth Amendment by failing to provide him with adequate protection against the cold and rain, as well as adequate storage space.  The district court held that the plaintiff was required to file a petition to initiate rulemaking only if he was seeking to "amend" or "alter" a rule regulating inmate property.  *Id.* at *4 n.6.  The district court did not hold that a petition to initiate rulemaking was required in every instance.  In fact, the court said

---

[1] Defendants also suggest that *Ross v. Blake*, 136 S. Ct. 1850 (2016), casts doubt on *Sims* and *Torres*.  It does not.  *Ross* did not change the bedrock rule that "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust' a claim." *Jones*, 549 U.S. at 218.  To the contrary, *Ross* reaffirmed that rule, holding that a plaintiff must exhaust "only those[] grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Ross*, 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

just the opposite, holding that if the plaintiff was challenging conditions of confinement (failure to provide adequate protection and storage space), he had "fully exhausted his available administrative remedies through the prison grievance procedure."  *Id.*

Here, Plaintiffs are not seeking a court order to "amend" regulations.  To the contrary, they are challenging the conditions of their confinement, asking the Court to declare those conditions unconstitutional and to enjoin Defendants from maintaining them.  ECF No. 41 at 29-30 ¶¶ C, D; *see also Torres*, 2015 WL 9854803, at *2 (court's commentary in *Smith* is inapplicable where a plaintiff "is not seeking to *amend* a rule but, instead, to have it invalidated or repealed") (emphasis added).  Accordingly, to the extent *Smith* may be persuasive precedent—not "binding," as Defendants claim, *see* Defendants' Motion to Dismiss Amended Complaint, ECF No. 45 ("MTD") at 6 n.3—it does not support Defendants' argument.

The other cases Defendants rely on are also unavailing.  Most involve challenges brought by federal prisoners and thus say nothing about Florida's grievance process.  *Id.* at 6-7.  In the only other case involving Florida's process, the court characterized a petition to initiate rulemaking as "one avenue Plaintiff might have taken."  *O'Connor v. Carnahan*, 2016 WL 8669909, at *4 n.1 (N.D. Fla. Nov. 15, 2016), *report & rec. adopted*, 2017 WL 1240749.  The court specifically declined to hold that Florida inmates had to exhaust the State's rulemaking process.  *Id.*

Finally, a petition to initiate rulemaking is not even an avenue of exhaustion that is "available" to Plaintiffs.  Under Florida law, Plaintiffs may file a petition to "adopt, amend, or repeal" a rule under Fla. Stat. § 120.54(7)(a), but as Defendants concede, MTD at 5 n.1, Plaintiffs are *not* eligible to file a petition to *invalidate* a rule under Fla. Stat. § 120.56.  *See* Fla. Stat. § 120.81(3)(a); *Quigley v. Fla. Dep't of Corr.*, 745 So. 2d 1029 (Fla. Dist. Ct. App. 1999) (construing a constitutional challenge to a rule as one brought under Fla. Stat. § 120.56); *Torres*,

2015 WL 9854803, at *3.  And if anything, that is what Plaintiffs are doing—seeking to *invalidate* rules regulating death row (they are actually challenging Defendants' practices).  Florida law thus prohibits Plaintiffs from doing administratively what Defendants say Plaintiffs are doing here.

Plaintiffs have satisfied the only requirement of the PLRA by exhausting the FDOC's three-step grievance process because, as Defendants concede, one Plaintiff's exhaustion of that process satisfies the requirement for all of a putative class.  MTD at 8 n.4.  This Court should reject Defendants' invitation to add another step to the exhaustion requirement.

**II.     Plaintiffs Have Sufficiently Pled an Eighth Amendment Claim.**

To prevail on their Eighth Amendment claim, Plaintiffs must prove that (1) "the condition complained of is sufficiently serious to violate the Eighth Amendment," and (2) Defendants acted with deliberate indifference to the particular condition at issue.  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  Because the question of whether an Eighth Amendment violation has occurred is "fact-intensive," *Chandler v. Baird*, 926 F.2d 1057, 1064 (11th Cir. 1991), courts generally refuse to dismiss Eighth Amendment claims at the pleading stage.  *See, e.g.*, *Palakovic v. Wetzel*, 854 F.3d 209, 225-26 (3d Cir. 2017); *Meriwether v. Faulkner*, 821 F.2d 408, 417 (7th Cir. 1987); *Shaw v. Hall*, 2014 WL 4287467, at *3 (M.D. Ga. Aug. 28, 2014); *Peoples v. Fischer*, 898 F. Supp. 2d 618, 626 (S.D.N.Y. 2012)); *Nair v. Sikes*, 1996 WL 882580, at *3 n.5 (N.D. Ga. Dec. 4, 1996).  Notably, *none* of the cases Defendants rely on to argue that Plaintiffs have not adequately pled an Eighth Amendment violation are pleading stage dismissals.  *See* MTD at 9-15.

The allegations in the complaint easily make out an Eighth Amendment violation.  Plaintiff adequately pleads the "objective" element of an Eighth Amendment violation by alleging with specificity that permanent solitary confinement deprives them of the basic human need for social interaction and environmental stimulation and thereby creates an unreasonable risk of serious harm

to their psychological and physical health and safety.  *See* ECF No. 41 ¶¶ 26-88, 104-05.  Plaintiffs adequately plead the "subjective" element by alleging with specificity that Defendants have acted and continue to act with deliberate indifference to this risk because they know about the well-publicized scientific research regarding the perils of prolonged solitary confinement, the corresponding recognition of that research in other prison systems, the international human rights community and the courts, and the harms Plaintiffs themselves have suffered, and yet have refused to change their practices.  *Id.* ¶¶ 89-93, 108.

### A. Plaintiffs Have Adequately Alleged that Their Conditions of Confinement Are Sufficiently Serious to Violate the Eighth Amendment.

To prove the conditions they challenge are sufficiently serious to violate the Eighth Amendment, Plaintiffs must show that, consistent with "the evolving standards of decency that mark the progress of a maturing society," *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958), the conditions are "extreme" and "at the very least . . . pose an unreasonable risk of serious damage to [an inmate's] future health or safety." *Chandler*, 379 F.3d at 1289 (citing *Hudson v. McMillan*, 503 U.S. 1, 8 (1992); *Helling v. McKinney*, 509 U.S. 25, 35 (1993)); *see also Spires v. Paul*, 581 F. App'x 786, 790 (11th Cir. 2014).  Importantly, the "[l]ength of confinement cannot be ignored in deciding whether the confinement meets constitutional standards." *Hutto v. Finney*, 437 U.S. 678, 686 (1978).  And when multiple conditions of confinement are at issue, courts consider them "in combination." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Here, Plaintiffs allege that they are confined to cramped, windowless cells in virtual isolation for years on end—limited to one 15-minute phone call a month, three showers a week, and two often-shortened trips to the exercise yard, and forbidden to participate in any educational, vocational or recreational programs.  ECF No. 41 ¶¶ 27, 29-32, 34, 38-40, 44, 46-49, 52, 57-59.  The predictable result is that Plaintiffs are in acute danger of suffering, and have suffered,

psychological and physical infirmities like anxiety, depression, lethargy, panic, appetite and sleep disturbances, rage, loss of control, paranoia, hallucinations, progressive inability to tolerate ordinary stimuli, muscle degeneration and headaches.  *Id.* ¶¶ 73-88.

These allegations are plainly sufficient to establish that permanent solitary confinement deprives Plaintiffs of the basic human need for social interaction and environmental stimulation and thereby creates an unreasonable risk of serious harm to their psychological and physical health and safety.  Courts have recognized that deprivation of the basic human need for social interaction and environmental stimulation due to prolonged solitary confinement is sufficient to establish the objective component of an Eighth Amendment claim.  *Porter*, 290 F. Supp. 3d at 528; *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678-79 (M.D. La. 2007); *Maddox v. Berge*, 473 F. Supp. 2d 888, 896 (W.D. Wis. 2007); *Piscitello v. Berge*, 2002 WL 32349400, at *3 (W.D. Wis. June 13, 2002), *aff'd* 94 F.App'x 350 (7th Cir. 2004).  Correspondingly, courts have recognized that the Eighth Amendment cannot tolerate prolonged solitary confinement that afflicts prisoners' mental and physical health.  *Palakovic*, 854 F.3d at 234; *Fussell v. Vannoy*, 584 F. App'x 270, 271 (5th Cir. 2014); *Porter,* 290 F.Supp.3d at 532; *Shoatz v. Wetzel*, 2016 WL 595337, at *12 (W.D. Pa. Feb. 12, 2016); *Shaw*, 2013 WL 5606562, at *5; *Ashker v. Brown*, 2013 WL 1435148, at *5-6 (N.D. Cal. Apr. 9, 2013); *cf. Davis*, 135 S. Ct. at 2209-10 (Kennedy, J., concurring) (recognizing the serious harms wrought—and Eighth Amendment concerns implicated—by prolonged solitary confinement); *Ruiz v Texas*, 137 S. Ct. 1246, 1247 (2017) (Breyer, J., dissenting) (observing that petitioner who had "developed symptoms long associated with solitary confinement, namely severe anxiety and depression, suicidal thoughts, hallucinations, disorientation, memory loss, and sleep difficulty" had a "strong" Eighth Amendment claim); *Glossip v. Gross*, 135 S. Ct. 2726,

2765 (2015) (Breyer, J., dissenting) ("[I]t is well documented that such prolonged solitary confinement produces numerous deleterious harms").[2]

If there were any doubts about the viability of an Eighth Amendment claim based on the risk of harm wrought by prolonged solitary confinement, another court recently put them to rest. In *Porter v. Clarke*, the District Court for the Eastern District of Virginia held that conditions on Virginia's death row, which mirrored the starkly isolative conditions alleged here, entitled Virginia death row inmates not only to litigate their claims beyond the pleading stage, but to *summary judgment*, the standard for which is far more stringent than the standard for Rule 12(b)(6) motions to dismiss. *See Porter*, 290 F. Supp. 3d at 530–31. This Court should similarly find that Plaintiffs' allegations satisfy the objective component of an Eighth Amendment claim.

Defendants' arguments that Plaintiffs have failed to allege that the conditions of their confinement are sufficiently serious to violate the Eighth Amendment are misplaced. By isolating each condition of confinement Plaintiffs mention (*e.g.*, lack of exercise, ventilation), Defendants suggest that conditions are to be considered individually, not in totality. That is incorrect. Conditions of confinement are considered "in combination." *Rhodes*, 452 U.S. at 347 ("[Prison conditions . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities."); *Hutto*, 437 U.S. at 687; *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575-76 (11th Cir. 1985). The only case Defendants cite for the proposition that a court may look at each condition in isolation, *see* MTD at 10, actually says the opposite. In *Wilson v. Seiter*, 501 U.S.

---

[2] *See also Sheley v. Dugger*, 833 F.2d 1420, 1429 (11th Cir. 1987) ("Sheley's twelve-year confinement in [Close Management] raises serious constitutional questions."); *Young v. Martin*, 801 F.3d 172, 180 n.8 (3d Cir. 2015); *Miller ex. rel. Jones v. Stewart*, 231 F.3d 1248, 1252 (9th Cir. 2000) (recognizing mental health damage caused by prolonged solitary confinement); *McClary v. Kelly*, 4 F. Supp. 2d 195, 209 (W.D.N.Y. 1998) ("[A] conclusion … that prolonged isolation from social and environmental stimulation increases the risk of development of mental illness does not strike this Court as rocket science."); *cf. Hutchinson v. Florida*, 677 F.3d 1097, 1106 (11th Cir. 2012) (Barkett, J., concurring) ("[T]he psychological effects of spending extended periods in solitary confinement . . . may impair an inmate's mental capabilities.").

294 (1991), the Supreme Court clarified that the focus of the Eighth Amendment inquiry is whether the conditions of confinement "*have a mutually enforcing effect* that produces the deprivation of a single, identifiable human need." *Id.* at 304 (emphasis added). Here, supported by decades of social science, Plaintiffs allege that a combination of conditions—perpetual solitary confinement in cramped, windowless cells, often for 24 hours a day, with little human interaction, minimal opportunity for exercise, and no vocational, recreational or educational programming—deprives them of the basic human need for social interaction and environmental stimulation and thereby creates an unreasonable risk of harm to their mental and physical health and safety. ECF No. 41 ¶¶ 3, 26-61. That is enough to survive dismissal and to permit Plaintiffs to prove their case.[3]

Defendants also rely almost entirely on case law from the 1980s and 1990s. Many of those cases are irrelevant because, as explained, they do not address the totality of the conditions of years-long solitary confinement. *Rhodes*, 452 U.S. 337 (challenge to "double celling"); *Farmer v. Brennan*, 511 U.S. 825 (1994) (challenge to placing transsexual prisoner in general prison population when he needed protection from other inmates); *Chandler*, 379 F.3d 1278 (high temperatures in prison cells during the summer); *Hosna v. Groose*, 80 F.3d 298 (8th Cir. 1996) (exercise); *Wishon v. Gammon*, 978 F.2d 446, 448-49 (8th Cir. 1992) (recreation time and, separately, unsanitary living conditions and contaminated food); *Bailey v. Shillinger*, 828 F.2d 651 (10th Cir. 1987) (exercise and free air); *Caldwell v. Miller*, 790 F.2d 589 (7th Cir. 1986) (exercise restrictions); *Wareham v. Jeffes*, 564 A.2d 1314 (Pa Commw. Ct. 1989) (inadequate medical treatment). Others are not Eighth Amendment cases, *see Smith v. Shettle*, 946 F.2d 1250 (7th Cir. 1991); actually help Plaintiffs, *Ruiz. v. Estelle*, 679 F.2d 1115, 1126 (5th Cir. 1982) (affirming finding "that TDC imposes cruel and unusual punishment on inmates in its custody as a result of

---

[3] *Hoptowit v. Ray*, 682 F.2d 1237, 1246-47 (9th Cir. 1982) provides Defendants no support, for it too gets this basic proposition wrong.

the totality of conditions in its prisons"); *Spain v. Procunier*, 600 F.2d 189 (9th Cir. 1979) (affirming order finding denial of fresh air and regular exercise violates Eighth Amendment); or are easily distinguishable, *see Peterkin v. Jeffes*, 855 F.2d 1021 (3d Cir. 1988) (after nine-day bench trial, district court not persuaded that inmates' emotional and psychological condition was due to prison conditions other than circumstance of living under death sentence).[4]

Moreover, Defendants' cases are unpersuasive because they are 25 years old or more and the question of whether the condition is serious enough to violate the Eighth Amendment is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8; *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010); *Porter*, 290 F. Supp. 3d at 529 ("Given the rapidly evolving information available about the potential harmful effects of solitary confinement . . . this Court is not bound by [] decades-old determinations."). Plaintiffs' more recent authority trumps. And again, none of Defendants' cases involved pleading stage dismissals.

## B. Plaintiffs Have Adequately Alleged that Defendants Acted with Deliberate Indifference.

To establish deliberate indifference, Plaintiffs must allege "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

Here, Plaintiffs allege that Defendants have placed death row inmates in permanent solitary confinement for years on end, despite knowing about (1) scientific research consistently

---

[4] *Jackson v. Meachum*, 699 F.2d 578, 584 (1st Cir. 1983) (plaintiff presently had "substantial opportunity" to be in others' company; if returned to more restrictive, prolonged or indefinite confinement, periodic review was necessary); *Bono v. Saxbe*, 620 F.2d 609, 614 (7th Cir. 1980) (periodic review of reasons why inmate was held in Control Unit and appellate procedure for such review negated indefinite nature of administrative segregation); *Griffin v. Coughlin*, 743 F. Supp. 1006, 1017 (N.D.N.Y. 1990) (bench trial; "given the amount of yelling back and forth between PC inmates, the separation experienced by plaintiffs is not absolute segregation, or even segregation in a strict sense"); *Lopez v. Pennsylvania Dep't of Corr.*, 119 A.3d 1081, 1090-92 (Pa. Commw. Ct. 2015) (petitioner stated a claim for violation of Eighth Amendment; focuses on cell lighting; does not discuss prolonged solitary confinement), *aff'd sub nom. Lopez v. Wetzel*, 144 A.3d 92 (Pa. 2016).

establishing the devastating effects of prolonged solitary confinement, ECF No. 41. ¶ 73; (2) the elimination of prolonged solitary confinement in other prison systems in response to this research, *id.* ¶ 91; (3) judicial recognition of the severe psychological damage caused by prolonged solitary confinement, *id.* ¶¶ 74-78; (4) the international human rights community's condemnation of prolonged solitary confinement as a human rights abuse equivalent to torture, *id.* ¶ 80; (5) the psychological and physical infirmities that Plaintiffs themselves have suffered, *id.* ¶¶ 90-91; and (6) the FDOC's *own* implicit recognition of the risks of prolonged solitary confinement in policies that severely restrict the use of solitary confinement for non-death row inmates for disciplinary and administrative purposes, *id.* ¶¶ 92-93.   As the district court found in *Porter*, these particularized allegations establish deliberate indifference.  *Porter*, 290 F. Supp. 3d at 532 (finding deliberate indifference based on the large body of academic literature regarding the risks of prolonged isolation and prison policies reflecting an awareness of those risks); *see also Palakovic*, 854 F.3d at 226; *Brannan v. Owens*, 2014 WL 840018 at *3 (M.D. Ga. Mar. 4, 2014).  In giving the point short shrift, Defendants do not seriously contend otherwise.  *See* MTD at 15.

### III.    Plaintiffs Have Sufficiently Stated a Fourteenth Amendment Claim.

The Fourteenth Amendment's Due Process Clause protects against deprivations of liberty without due process of law.  *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005).  A liberty interest protected by the Fourteenth Amendment may arise "from an expectation or interest created by state law or policies."  *Id.* at 221.  The "touchstone" for assessing whether a state-created liberty interest in avoiding restrictive conditions of confinement exists "is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"  *Id.* at 223 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  Thus, a state-created liberty interest exists when confinement "imposes atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life." *Id.* (citing *Sandin*, 515 U.S. at 484); *Magluta v. Samples*, 375 F.3d 1269, 1281-82 (11th Cir. 2004).  A due process violation occurs when a prisoner has such a liberty interest and is not "afforded due process in conjunction with the deprivation of that interest." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

Here, Plaintiffs allege that permanent solitary confinement imposes atypical and significant hardships on Plaintiffs in relation to the ordinary incidents of prison life in every other setting—general population, disciplinary confinement, and protective or close management.  ECF No. 41 ¶¶ 93, 110-19.  Plaintiffs specifically allege as follows:

- Non-death row inmates, even in maximum security, are not placed in "single-cell special housing" and thus can socialize and eat with others, hold jobs, make calls, and participate in educational, vocational and self-improvement programs, *id.* ¶¶ 62-66 (citing Fla. Admin. R. 33-204.003, 33-501.301, 33-601.201, 33-602.101(2)(b), 33-602.205(1)-(2)(a));

- Non-death row inmates are only placed in harsh conditions similar to death row *after* they have demonstrated non-compliant behavior while in prison, or have demonstrated while in prison that their safety in general population is at serious risk that they warrant placement in these conditions; *id.* ¶ 25 (citing Fla. Admin. R. 33-601.800, 33-602.220, 33-602.222);

- Non-death row inmates are placed in such conditions only after having an opportunity to challenge the placement, *id.* ¶ 25 (citing Fla. Admin. R. 33-601.304–308, 33.601.800(3));

- Even when non-death row inmates are placed in solitary confinement for disciplinary or administrative reasons, they are not permanently assigned to solitary confinement and are expected to return to general population, *id.* ¶ 67;

- When placed in disciplinary confinement, an inmate's placement must be reviewed weekly with the goal of returning them to open population as soon as it can be done safely; maximum administrative punishment for the most serious institutional infractions is 60 days, *id.* ¶ 68 (citing Fla. Admin. R. 33-601.314);

- Inmates placed in disciplinary confinement must be given a psychological screening assessment if confined for more than 30 days, must undergo such screening at least every 90 days, and if housed in disciplinary confinement for more than 60 days, are entitled to a formal evaluation that must include a valid justification for continuing to hold them in disciplinary confinement, *id.* ¶ 93 (citing Fla. Admin. R. 33-602.222(8);

- When placed in protective management, an inmate's placement must be reviewed every 30 days with the goal of returning them to open population as soon as it can be done safely,

16

*id.* ¶ 70 (citing Fla. Admin. R. 33-602.221(8));

- When placed in close management, an inmate's placement must be reviewed at least weekly for the first 60 days and once every 30 days thereafter, *id.* ¶ 71 (citing Fla. Admin. R. 33-601.800(16); and

- Inmates placed in administrative confinement must have their placement reviewed by an institutional classification team within the first 72 hours to ensure it is justified, *id.* ¶ 93 (citing Fla. Admin. R. 33-602.220(2), (8)).

These allegations are sufficient to establish a Due Process-violating deprivation of a liberty interest because they show that Plaintiffs' confinement "imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life," *Wilkinson*, 545 U.S. at 223; *Magluta*, 375 F.3d at 1281-82, and that Defendants furnish Plaintiffs no procedural safeguards for avoiding deprivation of that liberty interest. ECF No. 41 ¶ 25; *Bass*, 170 F.3d at 1318.

Defendants argue that Plaintiffs do not possess a protectable liberty interest because Florida's death row regulations do not explicitly provide death row inmates any right to move to less restrictive housing. *See* MTD at 16-20. This argument is based on a single case that is inconsistent with binding precedent. In *Prieto v. Clarke*, 780 F.3d 245 (4th Cir. 2015), the Fourth Circuit adopted a "two-part analysis" to determine whether a state-created liberty interest exists: an inmate must (1) "find[] a basis for an interest or expectation in state regulations" and then (2) "demonstrate that denial of this state-created interest resulted in an 'atypical and significant hardship' to him." *Id.* at 249-50. *Prieto* conflicts with the Supreme Court's decision in *Wilkinson* and the Eleventh Circuit's decision in *Magluta*. Those decisions do not require a specific review of mandatory language in state law for the claimed liberty interest; rather, they require an inquiry into "*the nature*" of the conditions of confinement—*i.e.*, whether the conditions impose an atypical and significant hardship as compared to the ordinary incidents of prison life. *Wilkinson*, 545 U.S. at 223 (emphasis added); *Magluta*, 375 F.3d at 1282. Notably, in *Magluta*, the Eleventh Circuit

recognized that the Supreme Court "expressly abandoned" a search for mandatory language in regulations—what Defendants call for here—in favor of the "'atypical and significant hardship' standard." 375 F.3d at 1281-82. The Eleventh Circuit has consistently adhered to this standard. *E.g.*, *Delgiudice v. Primus*, 679 F. App'x 944, 947 (11th Cir. 2017); *Moulds v. Bullard*, 452 F. App'x 851, 854 (11th Cir. 2011); *Ramey v. Bryson*, 2017 WL 2569609, at *2 (M.D. Ga. Apr. 27, 2017); *Whitsett v. Cannon*, 139 F. Supp. 3d 1293, 1305 (M.D. Fla. 2015). Other circuits have, too. *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 559 n.46 (3d Cir. 2017) ("We are not persuaded by Defendants' attempt to insert a second criterion, namely, that a 'state-created' interest must be formalized through law or policy."); *Chappell v. Mandeville*, 706 F.3d 1052, 1063–64 (9th Cir. 2013); *Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010).[5]

Defendants next argue that, in any event, death row conditions do not qualify as an atypical and significant hardship in relation to ordinary incidents of prison life. MTD at 20-22. That point fares no better. Ordinary incidents of prison life may include the conditions in other classifications in FDOC facilities—general population, administrative segregation, protective custody, and "control units." *See Wilkinson*, 545 U.S. at 214-15; *Sandin*, 515 U.S. at 486; *Whitsett*, 139 F. Supp. 3d at 1302 ("[C]ourts in this Circuit [look to] . . . conditions experienced by the general population." (citing *Magluta*, 375 F.3d at 1282-83); *Bass*, 170 F.3d at 1318; *Spaulding v. Woodall*,

---

[5] Even under the additional step required by the Fourth Circuit, Plaintiffs have "an interest or expectation [specifically derived from] state regulations." Non-death row inmates are initially classified and assigned to facilities and hosting units "based upon such factors as nature and severity of offense, characteristics of sentence, criminal history, age, health status, and any other factor relating to the security and order of the institution or the security and safety of the general public." Fla. Admin. R. 33-601.210(1)(a). Death row inmates, by contrast, are automatically placed in "single-cell special housing" without this fulsome review. *Id.* 33-601.830(a). Further, certain regulations implicitly recognize that death row inmates will have the opportunity to leave single-special housing. But Plaintiffs do not receive the benefits of these rules. *See* Fla. Admin. R. 33-601.830(3)(a) ("At least annually, a death row inmate shall be reviewed by his classification officer to determine overall institutional adjustment based on the inmate's disciplinary history, participation in programming, and cooperation with staff."); Fla. Admin. R. 33-601.830(3)(b)(2) ("The ICT shall conduct a review of a death row inmate when the inmate has had restrictions placed on his outdoor exercise pursuant to subparagraph (7)(j)3."); *see also* ECF No. 41 ¶¶ 24-25.

551 F. App'x 984, 987 (11th Cir. 2014); *Wallace v. Hamrick*, 229 F. App'x 827, 830 (11th Cir. 2007)).   Here, as shown in the bullet-pointed paragraphs above, Plaintiffs sufficiently allege atypical and significant hardships in relation to the conditions in general population, disciplinary confinement, and protective or close management.   *E.g.*, *Wilkinson*, 545 U.S. at 214 (considering the "extreme isolation" and deprivation of "of almost any environmental or sensory stimuli and of almost all human contact" in supermax prison).   Indeed, courts in the Eleventh Circuit already have held that prolonged solitary confinement constitutes atypical and significant hardship.   *See Williams v. Fountain*, 77 F.3d 372, 374 n.3 (11th Cir. 1996); *Smith v. Humphrey*, 2012 WL 774963, at *4-5 (M.D. Ga. Feb. 13, 2012); *see also Smith v. Deemer*, 641 F. App'x 865, 868 (11th Cir. 2016) ("[A]typical and significant hardships must exist for a significant period of time.").

## IV.   Defendants Jordan and Reddish Are Not Redundant.

Defendants Jordan and Reddish are the wardens of UCI and FSP, respectively.   ECF No. 41 ¶¶ 21-22.   Plaintiffs allege that, in their official capacities, Jordan and Reddish have violated Plaintiffs' constitutional rights by subjecting them to the harsh, isolative conditions of permanent solitary confinement.   *Id.* ¶¶ 101-19. Defendants counter that the claims against Jordan and Reddish should be dismissed because only Defendant Jones, FDOC Secretary, can provide the relief sought because only she "has the authority to change Department policy regarding the housing and custody status of death row inmates." MTD at 22.   This argument is without merit.

Courts have dismissed redundant defendants where a plaintiff "sues both a governmental employee in his or her official capacity and the employee's employer" because, in fact, the plaintiff is "actually suing only one defendant—the underlying government entity" and, accordingly, "any judgment against the government employee would actually be satisfied by the underlying government entity." *Prickett v. DeKalb Cnty.*, 1998 WL 928308, at *2 (N.D. Ga. Dec. 1, 1998).

That is the only proposition Defendants' cases support:  a defendant sued in an official capacity should be dismissed if the plaintiff also sues his employer or other officials who can provide the same relief.  *See* MTD at 22-23 (citing cases).

That is not the case here.  Plaintiffs are challenging the conditions of their confinement. The conditions are not only the result of Departmental rules; they are the result of how those rules are administered.  For example, FDOC rules theoretically require that "[a]t least annually, a death row inmate shall be reviewed by his classification officer to determine overall institutional adjustment based on the inmate's disciplinary history, participation in programming, and cooperation with staff."   Fla. Admin. R. 33-601.830.  Yet Jordan and Reddish have never moved any death row inmate from "single-cell special housing" as a result of any annual review.  Am Compl. ¶ 24.  Another example: although FDOC regulations explicitly permit death row inmates to participate in self-improvement programs absent a security threat, Jordan and Reddish do not offer Plaintiffs any opportunities to participate in self-improvement programs.  *Id.* ¶¶ 39, 58.  And another: while FDOC regulations prescribe three hours of exercise twice a week for death row inmates, Plaintiffs often receive less, sometimes none at all.  *Id.* ¶¶ 34, 52.  Accordingly, relief against Jones, who approves the rules, Fla. Stat. § 944.09(1), would not necessarily provide relief against Jordan and Reddish, who implement the rules and administer the conditions on death row, *id.* §§ 944.09(1), 944.14.  Jordan and Reddish should not be dismissed.  *E.g.*, *Carmichael v. Jones*, 2017 WL 2637410, at *7 (N.D. Fla. Apr. 12, 2017) (denying motion to dismiss claims against prison doctors where plaintiff also sued Secretary Jones because they serve separate functions), *report & rec. adopted*, 2017 WL 2636492.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

/s/ Linda McDermott

Linda McDermott (SBN 102857)
**TRIAL COUNSEL**
Martin J. McClain (SBN 754773)
McCLAIN & MCDERMOTT P.A.
141 NE 30th Street
Wilton Manors, FL 33334-1064
Tel. (850) 322-2172
Fax. (954) 564-5412
Lindamcdermott@msn.com


/s/ Claire M. Wheeler

Seth A. Rosenthal
Claire Wheeler
VENABLE LLP
600 Massachusetts Avenue NW
Washington, DC 20001
Tel. (202) 344-4000
Fax. (202) 344-8300
Sarosenthal@venable.com
Cmwheeler@venable.com

Evan T. Shea
Matthew T. Shea
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Tel. (410) 244-7400
Fax. (410) 244-7742
Etshea@venable.com
Mtshea@venable.com

*Attorneys for Plaintiffs Mark Davis, Mark Geralds, Jesse Guardado, Joseph Jordan, Robert Rimmer, Steven Stein, Jason Stephens, and Gary Whitton*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 23, 2018, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that a true and correct copy of the foregoing was served on all counsel or parties of record by CM/ECF.

<u>/s/ *Claire M. Wheeler*</u>
Claire M. Wheeler (*pro hac vice*)