UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARK DAVIS, et al.,

          Plaintiffs,

v.                           Case No. 3:17-cv-820-J-34PDB

MARK S. INCH,[1] et al.,

          Defendants.

_____

**ORDER**

**I. Status**

Plaintiffs, death-sentenced inmates of the Florida penal system, initiated this action with the benefit of counsel on July 19, 2017, by filing a "Class Action Complaint for Declaratory and Injunctive Relief" (Complaint; Doc. 1) pursuant to 42 U.S.C. § 1983. They filed an "Amended Class Action Complaint for Declaratory and Injunctive Relief" (AC; Doc. 41) on March 28, 2018. In the AC, Plaintiffs Mark Davis, Mark Geralds, Jesse Guardado, Joseph Jordan, Robert Rimmer, Steven Stein, Jason Stephens, and Gary Whitton name the following Defendants: (1) the Secretary of the Florida Department of Corrections (FDOC); (2) Kevin Jordan, the Warden of

---

[1] Plaintiffs bring only official capacity claims against the Secretary of the Florida Department of Corrections. See "Amended Class Action Complaint for Declaratory and Injunctive Relief" (Doc. 41) at 5. Therefore, Mark S. Inch (the current Secretary of the Florida Department of Corrections) is substituted for Julie L. Jones (the former Secretary of the Florida Department of Corrections). See Fed. R. Civ. P. 25(d).

Union Correctional Institution (UCI); and (3) Barry Reddish, the Warden of Florida State Prison (FSP). They assert that the Defendants have violated and continue to violate their federal constitutional rights when they enforce a "rigid" FDOC policy that automatically places Plaintiffs in permanent "single-cell special housing" (solitary confinement) without any opportunities for review and/or relief from the harsh, restrictive, long-term death row conditions. <u>See</u> AC at 3, 5, 26-29. As relief, they seek declaratory and injunctive relief.

This matter is before the Court on Defendants' Motion to Dismiss Amended Complaint (Motion; Doc. 45) with exhibits (Def. Ex.). Plaintiffs responded. <u>See</u> Opposition to Defendants' Motion to Dismiss Amended Complaint (Response; Doc. 47). Defendants' Motion is ripe for review.

## II. Plaintiffs' Allegations

Plaintiffs assert that the Defendants have violated and continue to violate their Eighth Amendment rights when they enforce the FDOC's policy of automatic, indefinite solitary confinement for death-sentenced inmates because the inhumane conditions impose an unreasonable risk of serious harm to their health and safety. <u>See</u> AC at 3, 5, 26-27. They also contend that the Defendants have violated and continue to violate their Fourteenth Amendment right when they: (1) subject them to death row conditions that impose an atypical and significant hardship that other FDOC inmates are not

2

subjected to, and (2) deny them the same opportunity that other FDOC inmates have for review and/or relief from restrictive conditions. See id. at 3, 27-29. As relief, Plaintiffs seek a declaratory finding that Defendants' policy of assigning and housing death-sentenced inmates in permanent solitary confinement is a violation of the Eighth and Fourteenth Amendments. See id. at 29. They also request that the Court direct the Defendants to (1) abolish the policy of automatic, indefinite solitary confinement for death-sentenced inmates, and (2) develop and implement constitutionally adequate procedures to (a) assign death-sentenced inmates to housing, (b) periodically review the housing assignments, and (c) permit death-sentenced inmates to obtain review and relief from such housing assignments. See id. at 29-30.

More specifically, Plaintiffs allege that FDOC Rule 33-601.830(1)(a) requires that death-sentenced inmates be housed in "single-cell special housing status" that is "separate from general population housing." See id. at 5-6. They aver that a death-sentenced inmate is automatically assigned to death row at UCI or FSP and "permanently and indefinitely" placed in solitary confinement. See id. at 6. They describe the sub-par death row conditions at UCI and FSP,[2] and compare them with the less restrictive conditions for non-death-sentenced (NDS) inmates as

_____

[2] According to Plaintiffs, Davis, Geralds, Guardado, Rimmer, Stein, and Whitton are housed on UCI's death row, see AC at 7, and Stephens and Jordan reside on FSP's death row, see id. at 10.

3

well as the non-permanent conditions that inmates assigned to administrative confinement (AC), disciplinary confinement (DC), protective management (PM), and close management (CM) experience. See id. at 2, 6-14.

According to Plaintiffs, the FDOC's policy of "automatic, indefinite solitary confinement" for death-sentenced inmates is "extreme, debilitating, and inhumane." Id. at 2. They assert that Defendants deprive Plaintiffs of "basic human contact" in a confined space where they "languish alone in cramped, concrete, windowless cells, often for twenty-four hours a day, for years on end." Id. They describe similar sub-par, restrictive conditions at UCI and FSP where death-sentenced inmates are confined twenty-four hours a day without routine human interaction, id. at 9, 12, 18, and endure the following: (1) cramped one-person cells, see id. at 7, 10; (2) no ability to see other inmates from their cells, see id.; (3) minimal cell ventilation with no cold water and hot-to-the-touch walls, see id.; (4) meals consumed in the cells rather than a group setting, see id. at 8, 11; (5) limited out-of-cell showers (three times a week) that officers sometimes lessen to less than five minutes and/or discourage by rummaging through the inmates' property, see id.; (6) restricted out-of-cell yard exercise (twice a week for three hours) that may be nonexistent due to guard shortages and/or inmate discipline issues, see id.; (7) an unshaded exercise yard at FSP, see id. at 12; (8) limited access to

the prison law library (once a week) with only one inmate permitted in the library at a time, see id. at 9, 12; (9) one fifteen-minute telephone call per month to a pre-approved person unless there is an emergency situation, such as to notify the inmate about a family death and/or ensure the inmate's access to attorneys and/or the courts, see id.; and (10) no participation in self-improvement programs, although permitted by the rules, see id.

Plaintiffs aver that they have suffered and/or are at risk of suffering serious harm to their mental and physical health, including, but not limited to, depression, psychosis, suicidal tendencies, and degeneration of their eyes, teeth, muscles, and joints. See id. at 10, 13, 19. They maintain that Davis, Guardado, and Jordan have "struggled" with exercise yard interaction due to mental and physical "infirmities" associated with prolonged solitary confinement. Id. at 19. Additionally, they state that Guardado and Whitton "have developed defense mechanisms that deaden feelings and emotions . . . ." Id. at 20.

Plaintiffs maintain that NDS inmates who are placed in solitary confinement for administrative or disciplinary reasons are not permanently assigned to such confinement and are expected to return to general population to socialize and eat with other prisoners, hold jobs, make phone calls, and participate in out-of-cell educational, vocational, and self-improvement programs. See id. at 13-15. They explain that any assignments to AC, CM, DC, and

PM are for limited time periods, and the FDOC rules provide opportunities for review and relief from the restrictive confinement as well as psychological assessments. See id. at 14-15, 22.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>See Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

### IV. Summary of the Arguments

In the Motion, Defendants request dismissal of Plaintiffs' claims against them because Plaintiffs failed to exhaust their administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant 42 U.S.C. § 1983 lawsuit. <u>See</u> Motion at 2-9. They also assert that the Court should

dismiss Plaintiffs' Eighth and Fourteenth Amendment claims, see id. at 9-21, and claims for injunctive relief, see id. at 22-23. In response to Defendants' Motion, Plaintiffs assert that they "faithfully exhausted their administrative remedies" before filing the lawsuit. Response at 2, 6-9. Additionally, they maintain that they state plausible Eighth and Fourteenth Amendment claims against the Defendants, see id. at 9-19, and claims for injunctive relief against Defendants Jordan and Reddish, see id. at 19-20.

## V. Discussion

### A. Exhaustion of Administrative Remedies

#### 1. Exhaustion under the PLRA

Exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions may be initiated by a prisoner. See 42 U.S.C. § 1997e(a). Nevertheless, prisoners such as Plaintiffs are not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); Jones, 549 U.S. at 211; Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). A prisoner must exhaust each claim

that he seeks to present in court. See Jones, 549 U.S. at 219-20

("All agree that no unexhausted claim may be considered."). Not

only is there an exhaustion requirement, "the PLRA exhaustion

requirement requires proper exhaustion." Woodford, 548 U.S. at 93.

> Because exhaustion requirements are
> designed to deal with parties who do not want
> to exhaust, administrative law creates an
> incentive for these parties to do what they
> would otherwise prefer not to do, namely, to
> give the agency a fair and full opportunity to
> adjudicate their claims. Administrative law
> does this by requiring proper exhaustion of
> administrative remedies, which "means using
> all steps that the agency holds out, and doing
> so properly (so that the agency addresses the
> issues on the merits)." Pozo,[3] 286 F.3d, at
> 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands

compliance with an agency's deadlines and other critical procedural

rules . . . ." Id. As such, the United States Supreme Court has

emphasized:

> Courts may not engraft an unwritten
> "special circumstances" exception onto the
> PLRA's exhaustion requirement. The only limit
> to § 1997e(a)'s mandate is the one baked into
> its text: An inmate need exhaust only such
> administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

Although proper exhaustion is generally required, a remedy

must be "available" before a prisoner is required to exhaust it.

Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008); Goebert

---

[3] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007). An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief. See Ross, 136 S.Ct. at 1860. Additionally, the Eleventh Circuit has recognized that an administrative remedy that "is unknown and unknowable is unavailable" in that it is "not 'capable of use for the accomplishment of a purpose.'" Goebert, 510 F.3d at 1323 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

The determination of whether an inmate properly exhausted his available administrative remedies prior to filing suit in federal court is a matter of abatement and should be raised in a motion to dismiss, or be treated as such if raised in a summary judgment motion. Bryant, 530 F.3d at 1374-75 (citation omitted). The Eleventh Circuit has explained the two-step process that a court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id.

> Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see also Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).[4]

## 2. Exhaustion under Florida's Prison Inmate Grievance Procedures

The FDOC is responsible for establishing inmate grievance procedures that satisfy the purposes of the PLRA. See Chandler v. Crosby, 379 F.3d 1278, 1287-88 (11th Cir. 2004) (citing Fla. Stat. Ann. §§ 944.09(1)(d), 944.331). Fulfilling that obligation, the FDOC has promulgated the Inmate Grievance Procedures set forth in Chapter 33-103 of the Florida Administrative Code. See id. at 1288. Pursuant to Chapter 33-103, an inmate in Florida "must (1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3)

---

[4] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

submit an appeal to the Secretary of the FDOC." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1211 (11th Cir. 2015) (citations omitted).[5]

The Inmate Grievance Procedures provide time frames for submission of grievances, <u>see</u> FLA. ADMIN. CODE r. 33-103.011, as well as rules regarding the form and content of an individual grievance or appeal, <u>see</u> FLA. ADMIN. CODE r. 33-103.005(1)(b), 33-103.006(1)(b)(2), 33-103.007(2)-(4). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more ... conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). Some of the reasons for returning a grievance are: the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood" or is a supplement to a previously-submitted grievance that has been accepted for review; and the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable," or "used more than two (2) additional narrative pages." <u>See</u> FLA. ADMIN. CODE r. 33-103.014(1)(a), (b), (c), (f), (q), (t). Nothing in the Inmate Grievance Procedures set forth in Chapter 33-103

---

[5] Exceptions to this three-step procedure are set forth in Chapter 33, but they are not relevant to this action. <u>See</u> FLA. ADMIN. CODE r. 33.103.005(1), 33.103.006(3), 33.103.007(3).

12

suggests that an inmate must take any additional steps once he has timely completed all three steps outlined there.

### 3. Plaintiffs' Exhaustion Efforts

Defendants assert that Plaintiffs failed to exhaust their administrative remedies, as required by the PLRA, before filing this 42 U.S.C. § 1983 lawsuit. See Motion at 2-9. They acknowledge that Plaintiff Davis completed the FDOC's internal grievance procedure, and that by virtue of the doctrine of vicarious exhaustion, if the Court grants class certification, his exhaustion efforts would apply to the class as a whole. See id. at 8 n.4 (citing Chandler, 379 F.3d at 1287-88).[6] Nevertheless, Defendants assert that the "normal prisoner grievance process alone" is "insufficient" to properly notify the FDOC about a rule challenge. Id. at 5. They maintain that Davis and, by extension all Plaintiffs, failed to exhaust the administrative remedies available to them because they failed to file a petition to initiate

---

[6] Defendants state that they intend to preserve the exhaustion defense as to the "other plaintiffs" in the event that the Court denies Defendants' Motion or Plaintiffs' motion for class certification. See Motion at 8 n.4. In an Order entered on June 20, 2018, the Court deferred ruling on Plaintiffs' Amended Motion for Class Certification (Doc. 48) until after resolution of the instant Motion to Dismiss. See Order (Doc. 52). While Plaintiffs Whitton, Stein, Rimmer, Guardado, Geralds, and Stephens, as well as unnamed members of the putative class, appear to be relying on the doctrine of vicarious exhaustion, Plaintiff Jordan does not. In the AC, Plaintiffs specifically assert that Jordan completed all three steps of the Inmate Grievance Procedures. See AC at 23. Defendants do not dispute or otherwise address this allegation in the Motion.

rulemaking (PIR) pursuant to Florida Statutes section 120.54(7) prior to filing the Complaint in this case. See id. at 7. According to Defendants, Plaintiffs are seeking to amend FDOC Rule 33.601.830, which regulates death row housing, and therefore, they were required not only to exhaust their claims using the prison's Inmate Grievance Procedures, but also were required to file a PIR under Florida Statutes section 120.54(7) prior to filing the Complaint. Id. In support of their position, Defendants submit the declarations of Betty Money, the FDOC records custodian for PIRs. See Def. Ex. A at 1-8. She declares that the FDOC has not received PIRs from any of the Plaintiffs. See id.

In response, Plaintiffs assert that they have exhausted all required administrative remedies because Davis exhausted his administrative remedies through the FDOC's Inmate Grievance Procedures, and therefore satisfied the exhaustion requirement for the putative class. See Response at 6, 9. They maintain that Defendants' argument that Plaintiffs were also required to file a PIR before filing the lawsuit "is wholly unsupported." Id. at 6. Plaintiffs therefore ask that the Court "reject Defendants' invitation to add another step to the exhaustion requirement." Id. at 9. They assert that they are challenging Defendants' practices, and are not requesting that the Court direct the Defendants to amend FDOC rules, but instead, "if anything," are seeking to "invalidate" rules regulating death row. Id. at 9 (emphasis

deleted). Moreover, they maintain that, as prisoners, they are not eligible to file a petition seeking to invalidate a rule under Florida Statutes section 120.56. <u>Id.</u> at 8-9.

In support of their contention that filing a PIR is necessary to accomplish proper exhaustion, Defendants cite <u>Smith v. Conner</u>, No. 8:12-CV-52-T-30AEP, 2014 WL 299099 (M.D. Fla. Jan. 28, 2014), <u>aff'd sub nom</u>, <u>Smith v. Warden, Hardee Corr. Inst.</u>, 597 F. App'x 1027 (11th Cir. 2015).[7] Motion at 6. Defendants contend that the court there concluded that the inmate "failed to exhaust his administrative remedies in regard to his rule challenge because he had not filed a Petition to Initiate Rulemaking pursuant to § 120.54(7) Fla. Stat." <u>Id.</u> (citing <u>Smith</u>, 2014 WL 299099, at *7 n.6).[8] While it is true that in <u>Smith</u> the court determined that the plaintiff-inmate could not pursue a rule change without filing a PIR, what Defendants fail to recognize is that the court nevertheless permitted the plaintiff-inmate to pursue his Eighth Amendment claim regarding the effect of the property rule at issue. The court explained:

---

[7] Although the Eleventh Circuit affirmed the ultimate outcome of the <u>Smith</u> case, the issue of exhaustion was not raised or in any way considered on appeal.

[8] To the extent Defendants refer to the <u>Smith</u> decision as "binding precedent," <u>see</u> Motion at 6 n.3, they are mistaken. Decisions of other district courts are not binding. <u>See</u> <u>McGinley v. Houston</u>, 361 F.3d 1328, 1331 (11th Cir. 2004) (acknowledging the "general rule that a district judge's decision neither binds another district judge nor binds him. . . .").

> To the extent Plaintiff requests the Court
> order Defendants to make "the necessary
> additions to the inmate property list to allow
> necessary items [,]" the Court agrees that
> Plaintiff is attempting to alter a Department
> rule, specifically Rule 33-602.201, and
> therefore was required to initiate rulemaking
> under 120.54(7). To the extent, however,
> Plaintiff claims that Defendants have failed
> to provide him with adequate protection from
> the cold and wet weather, and adequate storage
> space, the Court finds that Plaintiff has
> fully exhausted his available administrative
> remedies through the prison grievance
> procedure.

Smith, 2014 WL 299099, at *4 n.6. Thus, in Smith, the court

explicitly limited its reference to, and reliance on, the PIR

process to the plaintiff-inmate's request to make changes to the

prison property rule. The court did not conclude that resort to the

PIR process was necessary for the plaintiff-inmate to pursue his

claims regarding the effect of the rule - i.e. the effect that the

property limitations had on the conditions of his confinement.

Here, Plaintiffs' AC contains no request that the Court order any

specific changes to the policies regulating confinement of death-

sentenced inmates. Instead, Plaintiffs seek a declaration that

FDOC's death row confinement policies violate their federal

constitutional rights and that Defendants be required to adopt

constitutionally adequate policies.[9] As such, the limited holding in Smith is inapplicable.

To the extent Defendants suggest that Smith should be read broadly as requiring resort to the PIR process to accomplish exhaustion based on the Plaintiffs' request to "abolish" current FDOC policies, the Court is not persuaded. In Jones, the Supreme Court addressed what must be done to satisfy the PLRA's exhaustion requirement. Jones, 549 U.S. at 218. The Court explained:

> In Woodford, we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," rules that are defined not by the PLRA, but by the prison grievance process itself.

Id. (quoting Woodford, 548 U.S. at 88) (emphasis added). As such, the Court determined that all that is required to "properly exhaust" under the PLRA is "compliance with prison grievance procedures." Id. In light of this determination, and after reviewing the applicable prison grievance procedures, the Court reversed dismissals for failure to exhaust based on the inmates' failure to identify by name the specific person later named as a defendant. Id. at 217-18. Rejecting the necessity of such information for purposes of exhaustion, the Court held:

---

[9] In contrast, the Smith plaintiff sought entry of a judgment requiring the amendment of the prison property rules to permit certain items he alleged were necessary such as a raincoat, rain hat, waterproof boots and "rubbers." Smith, No. 8:12-cv-52-T-30AEP, Doc. 11 at 25.

17

> The level of detail necessary in a grievance
> to comply with the grievance procedures will
> vary from system to system and claim to claim,
> <u>but it is the prison's requirements</u>, and not
> the PLRA, that define the boundaries of proper
> exhaustion. As MDOC's procedures make no
> mention of naming particular officials, the
> Sixth Circuit's rule imposing such a
> prerequisite to proper exhaustion is
> unwarranted.

<u>Id.</u> at 218 (emphasis added).

The Eleventh Circuit has similarly focused on the requirements of the applicable prison grievance procedures to determine whether an inmate has accomplished proper exhaustion. <u>See</u> <u>Miller v. Tanner</u>, 196 F.3d 1190 (1999). In <u>Miller</u>, the court explained:

> An inmate incarcerated in a state prison,
> thus, must first comply with the <u>grievance</u>
> <u>procedures established by the state department</u>
> <u>of corrections</u> before filing a federal lawsuit
> under section 1983.
>
> In deciding if Miller exhausted his
> administrative remedies, we do not review the
> effectiveness of those remedies, but rather
> whether remedies were available and exhausted.
> <u>See</u> <u>Alexander [v. Hawk,]</u> 159 F.3d [1321,] 1326
> [1998]. There is no dispute that the GDC made
> administrative remedies available to
> prisoners. Before deciding whether Miller
> followed the proper procedures to exhaust
> <u>those</u> remedies, we must first determine what
> the procedures were that he had to follow.

<u>Id.</u> at 1193 (emphasis added). Upon review of the applicable procedures, the court found no requirement that an inmate "sign and date" a grievance before submitting it to prison officials. <u>Id.</u> As such, the prison's rejection of the inmate's grievance for failure

to "sign and date" was improper, and the court reversed the dismissal of his complaint for failure to exhaust.

Notably, the Eleventh Circuit has repeatedly stated that the requirements of the applicable prison grievance system govern the issue of exhaustion. See Dimanche, 783 F.3d at 1211 ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.") (quoting Jones, 549 U.S. at 218); see also Gipson v. Renninger, 750 F. App'x 948, 951 (11th Cir. 2018) ("To determine 'proper exhaustion' in prisoner civil rights actions, courts look to the requirements of the 'prison grievance system.' A prisoner must comply with rules 'defined not by the PLRA, but by the prison grievance process itself.'") (internal citations omitted); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (noting that prisoners must comply with the grievance procedures adopted by the state department of corrections before filing a § 1983 action); Sims v. Nguyen, 403 F. App'x 410, 412 (11th Cir. 2010) (same); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (noting that "when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate . . . must file a grievance and exhaust the remedies available under _that_ procedure.") (emphasis added). Here, the PIR provision that Defendants seek to engraft into the PLRA exhaustion process is not part of the Inmate Grievance Procedures adopted by the state department of corrections, rather it is part of Florida's statutory

Administrative Procedures Act. <u>See</u> <u>generally</u> Fla. Stat. Chapter 120. The Inmate Grievance Procedures adopted by Florida's department of corrections are set forth in Chapter 33 of the Florida Administrative Code. A copy of the Inmate Grievance Procedures is required to be "available for access by inmates at a minimum in the inmate law library and from the housing officer. . . ." FLA. ADMIN. CODE r. 33-103.015(10). The Inmate Grievance Procedures, r. 33-103, contain no mention of filing a PIR nor do they in any way reference Florida's Administrative Procedures Act. Not surprisingly, the Inmate Grievance Procedures require an "Inmate Orientation" through which inmates must be given training on the grievance procedures and must acknowledge their receipt of such training. FLA. ADMIN. CODE r. 33-103.003(2). The FDOC Inmate Orientation Handbook instructs:

> **Grievances**
> The Department has a grievance process available for you to resolve issues you may have. You are encouraged to make every effort to resolve your issue prior to filing a grievance. There are two types of grievances, informal and formal. Grievance types and procedures will be explained to you during orientation <u>and can be found in Rule 33-103, Florida Administrative Code</u>.

Form N11-091, Inmate Orientation Handbook, Reception Center Processing (revised 12/2/16) at 16 (emphasis added).[10] Again, there

---

[10] The Inmate Orientation Handbook is available on the FDOC website at www.dc.state.fl.us/pub/files/Inmate OrientationHandbook.pdf (last visited March 26, 2019).

20

is no reference whatsoever to the filing of a PIR or Florida's Administrative Procedures Act in the Inmate Orientation Handbook or anywhere in Rule 33-103 of the Florida Administrative Code. The PIR provision of the Florida Administrative Procedures Act upon which Defendants rely simply is not part of the Inmate Grievance Procedures adopted by Florida's department of corrections. As such, Plaintiffs were not required to file a PIR before challenging the constitutionality of their conditions of confinement pursuant to rules or policies applicable to death-sentenced inmates.

Jurists in the Northern District of Florida similarly have concluded that the filing of a PIR is not necessary to accomplish proper exhaustion. <u>Martinez v. Jones</u>, Case No. 4:17cv210-MW/CAS, 2018 WL 3215737 (N.D. Fla. June 12, 2018) (finding that a separate APA rule challenge which would be heard by an administrative law judge would not further the purposes of exhaustion and was not required by the procedures adopted by the FDOC) <u>Report and Recommendation adopted sub nom Gavillan-Martinez v. Jones</u>, 2018 WL 4265216 (N.D. Fla. Sept. 5, 2018); <u>Sims v. Jones</u>, Case No. 4:16cv49-WS/CAS, 2018 WL 3242701, at *2-4 (N.D. Fla. Mar. 1, 2018) ("Because filing a [PIR] is not outlined in the [FDOC's] procedures to challenge a rule, Plaintiff cannot be said to have failed to exhaust administrative remedies. That statutory remedy is separate and apart from the [FDOC's] internal grievance procedures.") <u>Report and Recommendation adopted in relevant part</u>, 2018 WL 1535483, at *1

(N.D. Fla. Mar. 29, 2018); <u>Torres v. Fla. Dep't of Corr.</u>, Case No. 4:15cv464-RH/CAS, 2017 WL 9439165 (N.D. Fla. Aug. 16, 2017) <u>Report and Recommendation adopted</u>, 2017 WL 4031462, at *1-2 (N.D. Fla. Sept. 11, 2017) (rejecting contention that inmate was required to file a separate action under Florida's Administrative Procedures Act to properly exhaust).[11] Defendants acknowledge the existence of two of these decisions, <u>Torres</u> and <u>Sims</u>, but dismiss them as "incorrect and not persuasive." <u>See</u> Motion at 6 n.3. However, in doing so, they fail to address the rationale of those courts, a rationale that this Court finds to be quite persuasive.

Additionally, Defendants' citation to <u>O'Connor v. Carnahan</u>, No. 3:09cv224-WS/EMT, 2016 WL 8669909, at *4 (N.D. Fla. Nov. 15, 2016) <u>Report and Recommendation adopted</u>, 2017 WL 1240749 (N.D. Fla. Apr. 4, 2017), is unavailing. <u>See</u> Motion at 6-7 n.3. While in the <u>O'Connor</u> Report and Recommendation, the Magistrate Judge did observe that filing a PIR seemed to be "the most appropriate route for exhausting remedies to challenge a rule," that observation was not the basis of the court's finding that the plaintiff had failed to exhaust his administrative remedies. <u>See</u> <u>O'Connor</u>, 2016 WL

---

[11] While decisions of other district courts are not binding, they can be persuasive. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

8669909, at *4.[12] Instead, the Magistrate Judge recommended, and the District Judge agreed, that the plaintiff had failed to exhaust the administrative remedies of the inmate grievance system before filing his § 1983 action challenging the rule. See id. at *4-6. In doing so, the court observed that an argument that the plaintiff "must have used the [PIR] procedure to achieve exhaustion" was likely "unsound" and that the court viewed the PIR "procedure as simply one avenue plaintiff might have taken, another avenue being the regular inmate grievance procedure described above." Id. at *4 n.1. There, plaintiff did neither. As such, O'Connor provides no support for Defendants' contention that resort to the independent PIR process set forth in Florida's Administrative Procedures Act was required in order for Plaintiffs to exhaust their administrative remedies for the claims brought in this action.

In sum, the PLRA requires "proper exhaustion." Woodford, 548 U.S. at 93. Proper exhaustion requires compliance with "the prison grievance process itself," Jones, 549 U.S. at 218, which for state inmates means compliance "with grievance procedures adopted by the state department of corrections," Bingham, 654 F.3d at 1175. The state of Florida's department of corrections has promulgated its

---

[12] In the Motion, Defendants suggest that the FDOC did not argue in O'Connor that plaintiff should have filed a PIR to exhaust his challenge to the prison mail rule. See Motion at 7 n.3. This suggestion is factually inaccurate as that very argument, including reliance on the Smith decision, is presented on pages 10-12 of the motion for summary judgment, see O'Connor, No. 3:09cv224-WS/EMT, Doc. 372, addressed in the Report and Recommendation.

Inmate Grievance Procedures which generally require that an inmate "must (1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the FDOC." Dimanche v. Brown, 783 F.3d 1204, 1211 (11th Cir. 2015).[13] The Inmate Grievance Procedures further specifically state that they may be used to challenge "[t]he substance, interpretation and application of rules and procedures of the department that affect [inmates] personally[.]" FLA. ADMIN. CODE r. 33-103.001(4)(a).[14] It is undisputed that Davis completed each of the steps of the FDOC's Inmate Grievance Procedures and did so in a timely manner. Nothing

---

[13] Again, the Court acknowledges that these general requirements are subject to exceptions which are not relevant to the discussion here. See supra n.5.

[14] Even if the filing of a PIR could be considered to be an administrative remedy which Plaintiffs could have been required to exhaust, the undersigned would find it to be an unavailable remedy. This is so because the failure to include any reference to the Administrative Procedures Act in the written Inmate Grievance Procedures provided to inmates or the Inmate Orientation Handbook would render such a remedy "unknown and unknowable." See Sims, 2018 WL 3242701, at *3-4. Moreover, the undersigned is persuaded that because the Florida Administrative Procedures Act prohibits inmates from challenging the validity of a rule, which is what Plaintiffs do in this action, the PIR remedy under Florida Statute section 120.54 is equally unavailable to these Plaintiffs seeking to abolish the current rules governing confinement of death-sentenced inmates. See Torres v. Fla. Dep't of Corr., Case No. 4:15cv464-RH/CAS, 2015 WL 9854803, at *3-4 (N.D. Fla. Dec. 30, 2015) (quoting Quigley v. Florida Dep't of Corr., 745 So.2d 1029, 1030 (Fla. 1st DCA 1999)) Report and Recommendation adopted on January 18, 2016, ECF No. 21; Sims v. Jones, 4:16cv49-WS/CAS, 2016 WL 7826807, at *4 (N.D. Fla. Nov. 2, 2016) (citing Quigley, 745 So.2d at 1030 and Caldwell v. State, 821 So.2d 374-75 (Fla. 1st DCA 2002)).

more is required by the Inmate Grievance Procedures adopted by the state of Florida's department of corrections and nothing more was required for Davis to exhaust his administrative remedies for the claims set forth in the AC. See Jones, 549 U.S. at 218; Bingham, 654 F.3d at 175; Miller, 196 F.3d at 1193.

Here, Plaintiffs, as a putative class, challenge their death row conditions at UCI and FSP. The parties agree that Plaintiff Davis properly completed the FDOC Inmate Grievance Procedures. See Motion at 8 n.4; Response at 6, 9; AC at 23. Because the Court finds that having done so Davis satisfied the PLRA's administrative exhaustion requirement, he has also satisfied the exhaustion requirement for the putative class. See Chandler, 379 F.3d at 1287 ("We hold that a class of prisoner-plaintiffs certified under Rule 23(b)(2) satisfies the PLRA's administrative exhaustion requirement through 'vicarious exhaustion,' i.e., when 'one or more class members ha[s] exhausted his administrative remedies with respect to each claim raised by the class.'") (citations omitted). Thus, Defendants' Motion is due to be denied without prejudice to their right to raise an exhaustion defense as to Plaintiffs Whitton, Stein, Rimmer, Guardado, Geralds, and Stephens after the Court rules on Plaintiffs' Amended Motion for Class Certification (Doc. 48), if class certification is denied.[15]

---

[15] See Motion at 8 n.4. ("However, Defendants have not attached documentation to demonstrate that other plaintiffs may not have fully exhausted the Department's grievance process; accordingly, in

## B. Eighth Amendment Death Row Conditions

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Additionally, the Eleventh Circuit requires "'an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriquez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). In the absence of a federal constitutional deprivation or violation of a federal right attributable to a defendant, a plaintiff cannot sustain a cause of action against the defendant.

The Eleventh Circuit has explained the requirements for an Eighth Amendment violation.

---

the event the class is not certified or this motion not granted, Defendants respectfully reserve the exhaustion defense in this regard to be preserved for the other plaintiffs."). Nevertheless, the Court notes that Plaintiff Jordan alleged that he exhausted his administrative remedies by completing the three step grievance process and Defendants did not challenge his assertion. Thus, it appears that his claims are exhausted.

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." <u>Farmer</u>, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[16] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. <u>Id.</u> However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. <u>Hudson</u>, 503 U.S. at 8-9, 112 S.Ct. at 1000.[17] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. <u>Farmer</u>, 511 U.S. at 828, 114 S.Ct. at 1974 (quotation and citation omitted); <u>Wilson</u>, 501 U.S. at 303, 111 S.Ct. at 2327.[18]

<u>Thomas v. Bryant</u>, 614 F.3d 1288, 1306-07 (11th Cir. 2010). The Eighth Amendment also requires prison officials to "take reasonable measures to guarantee the safety of the inmates." <u>Farmer</u>, 511 U.S. 832) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)). However, not every injury that a prisoner suffers as a result of a prison condition necessarily equates to a constitutional violation. <u>See</u> <u>Goodman</u>, 718 F.3d at 1333. Only injuries that occur as a result of a prison official's deliberate indifference rise to the level of an Eighth Amendment violation. <u>See</u> <u>Farmer</u>, 511 U.S. at 834.

---

[16] <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

[17] <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).

[18] <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991).

The Eleventh Circuit has explained the requirement of deliberate indifference to a substantial risk of harm as follows:

> Proof of deliberate indifference requires a great deal more than does proof of negligence: "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Purcell, 400 F.3d at 1319-20 (emphasis supplied) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).[19]

> In other words, a plaintiff in [Plaintiffs'] position must show not only that there was a substantial risk of serious harm, but also that [Defendants] "subjectively knew of the substantial risk of serious harm and that [they] knowingly or recklessly disregarded that risk." Hale, 50 F.3d at 1583 (alteration omitted) (internal quotation marks omitted).[20] Whether prison officials had the requisite awareness of the risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842, 114 S.Ct. at 1981 (citation omitted). At the same time, the deliberate indifference standard — and the subjective awareness required by it — is far more onerous than normal tort-based standards of conduct sounding in negligence: "Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam).

---

[19] Purcell v. Toombs Cty., Ga., 400 F.3d 1313 (11th Cir. 2005).

[20] Hale v. Tallapoosa Cty., 50 F.3d 1579 (11th Cir. 1995).

<u>Goodman</u>, 718 F.3d at 1332 (emphasis deleted).

Defendants seek dismissal of Plaintiffs' Eighth Amendment claims against them, arguing that Plaintiffs fail to plead sufficient facts that would entitle them to relief. <u>See</u> Motion at 12-16. They maintain that Plaintiffs have not provided sufficient facts as to either the objective prong, <u>see</u> <u>id.</u> at 12-15, or the subjective prong of the Eighth Amendment, <u>see</u> <u>id.</u> at 15-16. Viewing the facts in the light most favorable to Plaintiffs, as the Court must, the Court is not so convinced.

Upon review of the AC, the Court finds that Plaintiffs have alleged facts sufficient to state plausible claims under the Eighth Amendment. In reaching this conclusion, the Court observes that Plaintiffs assert that the Defendants violated, and continue to violate, their Eighth Amendment rights when Defendants automatically place Plaintiffs in prolonged solitary confinement on death row for almost twenty-four hours a day with extremely limited human interaction and sporadic out-of-cell activity. According to Plaintiffs, the FDOC has housed them in solitary confinement year after year after year without any opportunity for review and/or relief from the severely harsh long-term conditions. Some of the Plaintiffs have experienced the alleged sub-par conditions on death row at FSP and UCI for over twenty years. <u>See</u> AC at 4-5; <u>see</u> <u>also</u> http://www.dc.state.fl.us/offenderSearch (Corrections Offender Network). The Court declines to find that these allegations if

proven would fail to state a plausible claim for a violation of the Eighth Amendment. As such, Defendants' Motion is due to be denied as to Plaintiffs' Eighth Amendment claims against them, and the parties will be given an opportunity to further develop the facts.

## C. Fourteenth Amendment Due Process

The Fourteenth Amendment prohibits any state from depriving a person of life, liberty, or property without due process of law. See U.S. Const. amend. XIV, sec. 1. Life and property are not at issue in the instant case, and therefore, Plaintiffs are entitled to due process only if they are being deprived of a liberty interest within the meaning of the Fourteenth Amendment. Courts "examine procedural due process questions in two steps; the first asks whether there exists a liberty or property interest which has been interfered with by the State[;] the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted); see also Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005). Liberty interests may arise from either the Due Process Clause or state law. See Meachum v. Fano, 427 U.S. 215, 225-27 (1976). In reviewing whether state law creates a liberty interest, the Supreme Court has directed that courts must focus on the nature of the deprivation at issue rather than a "search for a negative implication from mandatory language in prisoner regulations." Sandin v. Conner, 515 U.S. 472, 483

(1995).[21] Looking at the nature of the deprivation, the <u>Sandin</u> Court explained that state-created liberty interests rising to the level of requiring Due Process protection generally will be limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484 (internal citations omitted).

Notably, in the wake of <u>Sandin</u>, courts have reached inconsistent conclusions regarding what constitutes an "atypical and significant hardship" or how to determine the baseline of the "ordinary incidents of prison life." <u>Wilkinson</u>, 545 U.S. at 223 (describing the difficulty in comparing different Circuits' approaches in <u>Beverati v. Smith</u>, 120 F.3d 500, 504 (4th Cir. 1997), and <u>Keenan v. Hall</u>, 83 F.3d 1083, 1089 (9th Cir. 1996), with <u>Hatch v. Dist. of Columbia</u>, 184 F.3d 846, 847 (D.C. Cir. 1999); also citing <u>Wagner v. Hanks</u>, 128 F.3d 1173, 1177 (7th Cir. 1997)). In 2005, the Supreme Court revisited the issue of a prisoner's liberty interest in the context of a change in custodial conditions. <u>Wilkinson</u>, 545 U.S. 209. Although the Supreme Court had previously held that the Constitution does not give rise to a liberty interest

---

[21] In <u>Sandin</u>, the Supreme Court abrogated its prior methodology, in part, because federal courts had become too involved in the day-to-day management of prisons. <u>See</u> <u>Sandin</u>, 515 U.S. at 482-83.

in avoiding transfer to more adverse conditions of confinement, see
Meachum, 427 U.S. at 225, the Wilkinson Court held that a transfer
to a supermax facility did implicate a liberty interest under state
law. Wilkinson, 545 U.S. at 223-24. The Supreme Court reasoned
that, taken together, the conditions at the supermax facility[22] were
so extreme that, regardless of how the baseline was defined, the
restrictions imposed "an atypical and significant hardship within
the correctional context." Id. (citing Sandin, 515 U.S. at 483).
Thus, a liberty interest was implicated. Id. at 224. The Court
explained:

> [The] harsh conditions may well be necessary
> and appropriate in light of the danger that
> high-risk inmates pose both to prison
> officials and to other prisoners. . . . That
> necessity, however, does not diminish our
> conclusion that the conditions give rise to a
> liberty interest in their avoidance.

Id. (citation omitted).

Consistent with Sandin and Wilkinson, the Eleventh Circuit has
recognized that a prisoner can be deprived of his liberty in
violation of due process in two ways:

> The first is when a change in a prisoner's
> conditions of confinement is so severe that it
> essentially exceeds the sentence imposed by

---

[22] The Court described the "harsh conditions" as "almost all
human contact is prohibited" for the duration of the sentence, no
conversation is permitted among cells, the cell lights may be
dimmed, but remain on for twenty-four hours, exercise is limited to
one hour per day in a small indoor room, only annual reviews occur,
and otherwise eligible inmates are disqualified for parole
consideration. See Wilkinson, 545 U.S. at 223-24.

the court. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472,
484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418
(1995); <u>see</u>, <u>e.g.</u>, <u>Vitek v. Jones</u>, 445 U.S.
480, 492-93, 100 S.Ct. 1254, 1263-64, 63
L.Ed.2d 552 (1980) (holding that a prisoner is
entitled to due process prior to being
transferred to a mental hospital). The second
is when the state has consistently given a
certain benefit to prisoners (for instance,
via statute or administrative policy), and the
deprivation of that benefit "imposes atypical
and significant hardship on the inmate in
relation to the ordinary incidents of prison
life." <u>Sandin</u>, 515 U.S. at 484, 115 S.Ct. at
2300; <u>see</u>, <u>e.g.</u>, <u>Wolff v. McDonnell</u>, 418 U.S.
539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935
(1974) (prisoners may not be deprived of
statutory "good-time credits" without due
process); <u>cf.</u> <u>Dudley v. Stewart</u>, 724 F.2d
1493, 1497-98 (11th Cir. 1984) (explaining how
the state creates liberty interests). In the
first situation, the liberty interest exists
apart from the state; in the second situation,
the liberty interest is created by the state.

<u>Bass v. Perrin</u>, 170 F.3d 1312, 1318 (11th Cir. 1999) (footnote

omitted); <u>see</u> <u>also</u> <u>Magluta v. Samples</u>, 375 F.3d 1269, 1282 (11th

Cir. 2004) (recognizing "the new <u>Sandin</u> standard," under which

there is "no liberty interest and no constitutional violation ...

if the <u>Sandin</u> 'atypical and significant hardship' standard [is] not

met").

Applying this standard, in <u>Bass</u>, the Eleventh Circuit

considered a provision of the Florida Administrative Code which

provided for two hours of "yard time" for prisoners in close

management absent clear and compelling reasons to do otherwise. 170

F.3d at 1318. Finding that prisoners had a state-created interest

in yard time, the court concluded that the deprivation of yard time

imposed "enough of a hardship to qualify as a constitutionally protected liberty interest." Id. Although the prisoners were deprived of only two hours of yard time, the court found "the marginal value of those two hours" to be "substantial" to someone housed in close management. Id. As such, the deprivation of those two hours constituted an atypical and significant hardship warranting due process protection. See id. Notably, the ultimate determination of whether a liberty interest is implicated requires a fact-intensive inquiry as to what constitutes an "atypical and significant hardship" and where to look to determine the baseline of the "ordinary incidents of prison life." Sandin, 515 U.S. at 484; see Magluta, 375 F.3d at 1284 (vacating the district court's dismissal as to plaintiff's due process claims for further development of the record); Bass, 170 F.3d at 1318; Spaulding v. Woodall, 551 F. App'x 984, 987 (11th Cir. 2014); Wallace v. Hamrick, 229 F. App'x 827, 830 (11th Cir. 2007) ("The record before us does not contain adequate facts with respect to the conditions of Wallace's confinement as compared with the conditions of confinement of his fellow inmates to determine whether Wallace's confinement imposed an atypical and significant hardship 'in relation to the ordinary incidents of prison life.'") (citation omitted)).

In the instant case, Plaintiffs assert that Defendants have violated and continue to violate their Fourteenth Amendment right

when they (1) subject them to death row conditions that impose an atypical and significant hardship that other FDOC inmates are not subjected to, and (2) deny them the same opportunity that other FDOC inmates have for review and/or relief from restrictive conditions. Defendants seek dismissal of Plaintiffs' Fourteenth Amendment claim, arguing that Plaintiffs "do not have a liberty interest in avoiding the conditions of Florida's death row," Motion at 16, and Florida's death row is not an atypical and significant hardship in relation to the ordinary incidents of prison life, see id. at 20-22. In response, Plaintiffs assert that the prolonged and permanent solitary confinement on Florida's death row imposes atypical and significant hardships on Plaintiffs in relation to the ordinary incidents of prison life in "every other setting" (general population, AC, DC, CM, and PM). Response at 16, 19. Thus, Plaintiffs maintain that their allegations are sufficient to establish a due process violation under the Fourteenth Amendment because their prolonged and permanent solitary confinement meets the Sandin standard, and Defendants "furnish [them] no procedural safeguards for avoiding deprivation of that liberty interest." Id. at 17 (citations omitted).

As explained in Sandin, a liberty interest may exist either under the Due Process Clause or as created by a state, however, the focus should be on the nature of the deprivation itself rather than wrestling "with the language of intricate, often rather routine,

prison guidelines to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." <u>Sandin</u>, 515 U.S. at 480-81. Thus, whether the FDOC properly applied its rules, or any other implementing procedures, is less important than the nature of the deprivation and its effect on the conditions of Plaintiffs' confinement. Instead, the Court must determine whether Plaintiffs have alleged that their death row confinement and conditions deprive them of a liberty interest protected either by the Due Process Clause of its own force, or by some other state-created liberty interest that entitles them to procedural safeguards, such as periodic reviews and/or ultimate relief from the conditions.

Initially, the Court notes that the Supreme Court has determined that administrative confinement for short periods of time does not implicate a liberty interest under the Due Process Clause. <u>See</u> <u>Sandin</u>, 515 U.S. at 485-87 (thirty days); <u>Rodgers v. Singletary</u>, 142 F.3d 1252, 1253 (11th Cir. 1998) (per curiam) (two months). Also, a transfer to a more restrictive prison with less rehabilitative programs does not typically implicate a liberty interest under the Due Process Clause. <u>See</u> <u>Meachum</u>, 427 U.S. at 223-25; <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1976) (holding there is no constitutional entitlement to prison rehabilitative programs or to particular custody classifications under the Due Process

Clause); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Viewing Plaintiffs' allegations in the light most favorable to them, as the Court must, Plaintiffs fail to allege restraint that exceeds their death sentences in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. Nevertheless, they allege violations of liberty interests connected with their prolonged and permanent solitary confinement, which may instead arise under state law.

"[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson, 545 U.S. at 223 (quoting Sandin, 515 U.S. at 484). The Court notes that, in Sandin, where the Court held that a thirty-day disciplinary segregation did not present an atypical and significant deprivation by the state, the Court did so on a motion for summary judgment. 515 U.S. at 486. The Court first compared evidence of the treatment of inmates in disciplinary segregation, administrative segregation, and the general population to find that (1) the administrative segregation "mirrored those conditions" in disciplinary segregation, and (2) the thirty day confinement "did not work a major disruption in [the inmate's] environment[,]" before determining that no liberty interest was implicated. Id.

Indeed, much of the Eleventh Circuit and Supreme Court decisions determining the existence of state-created liberty interests compare such evidence on summary judgment or at trial, rather than at the pleading stage. See id.; Wilkinson, 545 U.S. 209; Wolff, 418 U.S. 539; Bass, 170 F.3d 1312; Rodgers, 142 F.3d 1252; Al-Amin v. Donald, 165 F. App'x 733 (11th Cir. 2006) (per curiam). Moreover, in close cases, courts are less willing to dismiss claims for failure to allege a state-created liberty interest at the motion to dismiss stage of the proceedings. See Spaulding, 551 F. App'x 984; Wallace, 229 F. App'x at 832; Magluta, 375 F.3d at 1282-83; but see Morales v. Chertoff, 212 F. App'x 888, 889-90 (11th Cir. 2006) (per curiam) (holding that neither the Due Process Clause nor Florida statutes bestowed a liberty interest in prisoner's position as a law clerk); Smith v. Regional Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 13 (11th Cir. 2010) (per curiam) (dismissing prisoner's claims because he failed to allege an atypical and significant hardship).

Upon review of the AC, the Court cannot find as a matter of law that the combinations of hardship that Plaintiffs allege, particularly when imposed automatically and indefinitely, are not atypical and significant when compared to "the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Notably, the Eleventh Circuit has recognized the length of an inmate's confinement or segregation to be significant in the determination of whether a

liberty interest is implicated. <u>See</u> <u>Al-Amin</u>, 165 F. App'x at 738;

<u>Williams v. Fountain</u>, 77 F.3d 372, 374 n.3 (11th Cir. 1996)

("Because Williams's sanctions-especially the full year of solitary

confinement-represent substantially more 'atypical and significant

hardship[s] ... [than the thirty days of segregated confinement

addressed in <u>Sandin</u>] in relation to the ordinary incidents of

prison life,' we assume that [Williams] suffered a liberty

deprivation and was entitled to due process."). In this regard, the

court has explained:

> "The length of confinement cannot be ignored
> in deciding whether the confinement meets
> constitutional standards." <u>Hutto v. Finney</u>,
> 437 U.S. 678, 686 (1978). For example, 30 days
> in solitary confinement was not such a
> hardship. <u>Sandin</u>, 515 U.S. at 485. Neither was
> two months in administrative confinement.
> <u>Rodgers</u>, 142 F.3d at 1253. However, a full
> year in solitary confinement can constitute
> such hardship. <u>Williams v. Fountain</u>, 77 F.3d
> 372, 374 n.3 (11th Cir. 1996).
>
> In cases where atypical hardship has been
> found, the confinement conditions were
> "extremely harsh." <u>Magluta</u>, 375 F.3d at 1282
> (determining that atypical and severe hardship
> existed where the prisoner was in solitary
> confinement, "locked in an extremely small,
> closet-sized space [ ] with minimal contact
> with other human beings for a prolonged time
> exceeding 500 days"); <u>see also</u> <u>Wilkinson v.
> Austin</u>, 545 U.S. 209, 223-24 (2005)
> (concluding that atypical and significant
> hardship existed where inmates were confined
> indefinitely, deprived of almost all human
> contact, cells were lit 24 hours per day,
> exercise was severely limited in an indoor
> room, and placement in such confinement led to
> parole consideration disqualification).

Simpkins v. Gulf CI Warden, No. 16-17386-E, 2017 WL 6034508, at *3 (11th Cir. Apr. 21, 2017); Smith v. Deemer, 641 F. App'x 865, 868 (11th Cir. 2016) (per curiam) (stating "atypical and significant hardships must exist for a significant period of time" and "must also be severe relative to regular prison").

Here, Plaintiffs' indefinite solitary confinement with the attendant restrictions, including limited out-of-cell activity and socialization, may be both atypical and significant when compared to the conditions of confinement experienced by NDS inmates. Thus, at the pleading stage, the Court cannot find as a matter of law that Plaintiffs' confinement does not impose an atypical and significant hardship "in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Accordingly, the Court finds that Plaintiffs' indefinite solitary confinement and attendant restrictions, all taken together, may implicate a state-created liberty interest. Thus, Defendants' Motion is due to be denied to permit the parties to develop the facts relating to Plaintiffs' death row conditions of confinement, the baseline of the ordinary incidents of prison life, and any process afforded to Plaintiffs for review and/or relief from the restrictive conditions. With a more extensive set of facts, the Court may determine that no liberty interest is implicated or that due process was afforded. However, viewing the facts in the light most favorable to

Plaintiffs, as the Court must, the Court finds that Plaintiffs' AC meets the <u>Iqbal</u> plausibility test.

## D. Defendants Reddish and Jordan

Defendants Reddish and Jordan seek dismissal of Plaintiffs' claims against them because only the FDOC Secretary has the authority to change policy relating to death row housing and custody. <u>See</u> Motion at 22. They state that neither Reddish nor Jordan, in their official capacities as Wardens of UCI and FSP, has the authority to enact or change FDOC policy. <u>See</u> <u>id.</u> They maintain that the FDOC Secretary "can provide the declaratory and injunctive relief Plaintiff[s] seek[] and additional official capacity parties are not needed." <u>Id.</u> In opposition, Plaintiffs assert that the Court should not dismiss Defendants Reddish and Jordan from this action because "relief against [the Secretary], who approves the rules, Fla. Stat. § 944.09(1), would not necessarily provide relief against Jordan and Reddish, who implement the rules and administer the conditions on death row, <u>id.</u> §§ 944.09(1), 944.14." Response at 21. Given Plaintiffs' assertions relating to Defendants Reddish and Jordan, <u>see</u> AC at 5, 10, 13, the Court is not convinced that the dismissal of Defendants Reddish and Jordan is appropriate at this stage of the litigation. Therefore, Defendants' Motion is due to be denied.

## VI. Conclusion

For the foregoing reasons, the Court determines that the Motion is due to be denied. As noted above, <u>see</u> <u>supra</u> n.6, the Court previously deferred ruling on Plaintiffs' Amended Motion for Class Certification (Doc. 48) until resolution of the instant Motion. Additionally, the Magistrate Judge vacated the deadlines set forth in the Amended Case Management and Scheduling Order (Doc. 54) and advised that if the Motion was denied, the Court would direct the parties to file a new case management report. Upon consideration of the claims in this action and the procedural posture of the case, the Court determines that before requiring a response to Plaintiffs' Amended Motion for Class Certification[23] or directing the parties to file another case management report, the Court should hold an in person preliminary pretrial conference pursuant to Rule 16, Federal Rules of Civil Procedure. As such, the Court will order Defendants to answer the AC and schedule a preliminary pretrial conference.

Based on the foregoing, it is now

**ORDERED**:

---

[23] <u>See</u> Order (Doc. 52)(stating Defendants shall have twenty-one days after a ruling on the motion to dismiss to file a response to Plaintiffs' motion for class certification).

1.    Defendants' Motion to Dismiss Amended Complaint (Doc. 45) is **DENIED**.[24]

2.    Defendants, **no later than April 22, 2019**, must file an Answer to the AC.

3.    Counsel of record are directed to appear for a Rule 16 Preliminary Pretrial Conference on **Tuesday, April 30, 2019, at 2:00 p.m.** before the undersigned at the United States Courthouse, 300 North Hogan Street, Courtroom No. 10B, Tenth Floor, Jacksonville, Florida.[25]

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of March, 2019.

Marcia Morales Howard
**MARCIA MORALES HOWARD**
United States District Judge

sc 3/26
c:
Counsel of Record

---

[24] The denial is without prejudice to Defendants asserting a failure to exhaust defense with regard to specific Plaintiffs in the event the Amended Motion for Class Certification (Doc. 48) is denied.

[25] All persons entering the Courthouse must present photo identification to Court Security Officers. Although cell phones, laptop computers, and similar electronic devices generally are not permitted in the building, attorneys may bring those items with them upon presentation to Court Security Officers of a Florida Bar card (presentation of the Duval County Courthouse lawyer identification card will suffice) or Order of special admission pro hac vice. However, all cell phones must be turned off while in the courtroom.