# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

------------------------------------------------------X
MARK DAVIS, et al.,                              :
                                                 :
                    Plaintiffs,                  :
                                                 :
          v.                                     :         Civil Action No. 3:17-cv-820-J-34PDB
                                                 :
RICKY D. DIXON, et al.,                          :
                                                 :
                    Defendants.                  :
------------------------------------------------------X

## <u>SETTLEMENT AGREEMENT</u>

Plaintiffs Mark Davis, Mark Geralds, Jesse Guardado, Joseph Jordan, Robert Rimmer, Steven Stein, Jason Stephens, and Gary Whitton, and Defendants Ricky D. Dixon, Travis Lamb, and Donald Davis hereby enter into this Settlement Agreement as a resolution of all claims asserted by Plaintiffs in this action.

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.     DEFINITIONS...................................................................................... 2

III.    IMPROVEMENTS TO CONDITIONS OF CONFINEMENT ON
        DEATH ROW...................................................................................... 4
        A.      Out-of-Cell Time ...................................................................... 4
        B.      Work Assignments.................................................................... 7
        C.      Mental Health Care ................................................................. 8
        D.      Movement-Related Use of Restraints and Strip Searches .................... 8

IV.     IMPLEMENTATION, MONITORING, AND ENFORCEMENT.................... 8
        A.      Implementation ........................................................................ 8
        B.      Inspection, Access, and Communications .................................. 9
        C.      Dispute Resolution for Alleged Breach ................................... 11
        D.      Remedy is for Breach of Contract, not Violation of a Consent
                Decree ................................................................................... 12
        E.      Class Certification, Notice, and Joint Motion.......................... 13

V.      PROHIBITION ON RETALIATION..................................................... 13

VI.     TERM OF AGREEMENT.................................................................... 14

VII.    COMPLIANCE WITH 18 U.S.C. § 3626 ........................................... 15

VIII.   ATTORNEYS' FEES AND COSTS ..................................................... 15

IX.     GENERAL CONTRACTUAL PROVISIONS ......................................... 16
        A.      Release ................................................................................... 16
        B.      Warranty of Understanding and Acknowledgement................... 16
        C.      Governing Law ....................................................................... 16
        D.      Construction ........................................................................... 16
        E.      Headings and Subheadings ..................................................... 17
        F.      Entire Agreement ................................................................... 17
        G.      Severability ............................................................................ 17
        H.      Counterparts ........................................................................... 17
        I.      Authorization and Binding Effect............................................ 18
        J.      Further Assurances.................................................................. 18

K.    Amendment ................................................................................. 18

L.    Waiver and Preservation of Remedies ....................................... 18

M.    Force Majeure Clause .................................................................. 18

N.    Agreement Subject to Legislative Appropriations ..................... 19

O.    Notices ......................................................................................... 20

## I.   **INTRODUCTION**

1.    Plaintiffs are individuals who have been on Death Row for many years and, in some cases, multiple decades.

2.    Until recently, Death Row for male prisoners in Florida was housed in two prisons, Florida State Prison ("FSP") and Union Correctional Institution ("UCI").  The male Death Row population, with the exception of those individuals whose death warrants are active, are now housed in one housing unit at UCI. Female prisoners who have been sentenced to death are housed at the Lowell Annex ("Lowell").  Death Row is known under Florida regulations as "single-cell special housing." Fla. Admin. R. 33-601.830(1)(a)).

3.    Plaintiffs have alleged that the Florida Department of Corrections ("FDC") maintains a policy that automatically places Florida prisoners sentenced to death in permanent solitary confinement, regardless of their behavior while incarcerated.  Plaintiffs allege that these conditions deprive them of the basic human contact required to maintain their mental and physical health.  As a result, the conditions on Death Row create a serious risk of harm to the health and safety of Plaintiffs and in fact have caused such harm, Plaintiffs allege.

4.    Defendants deny Plaintiffs' allegations. Their entry into this Agreement is not an admission of liability.

5.    Plaintiffs and Defendants agree that resolving this Action with this Agreement and without further litigation is in their respective best interests.

6.    In recent months, to show their good faith in entering into this Agreement, Defendants have taken remedial measures to ameliorate the conditions on Death Row, including the implementation of a pilot program that provides indoor out-of-cell time for congregate activity to Death Row Inmates who have been approved by the Institutional Classification Team (ICT) to

participate in Dayroom (indoor) out-of-cell time on one wing of Death Row. This Agreement requires Defendants to expand the pilot program to, *inter alia*: offer the Dayroom for congregate activity to all Eligible Death Row Inmates; increase access to showers; furnish Death Row Inmates greater access to the multimedia kiosks for inmates to purchase and download available content to their currently available tablets; offer Death Row Inmates increased access to telephones; improve conditions for outdoor exercise; guarantee access to confidential mental health care in accordance with FDC policy applicable to all inmates; and assign qualified Death Row Inmates to Work Assignments as approved by the ICT.

## II.   DEFINITIONS

7.    "Action" refers to the above-entitled action captioned *Mark Davis, et al. v. Ricky D. Dixon, et al.*, Case No. 3:17-cv-820-J-34PDB, in the United States District Court for the Middle District of Florida.

8.    "Business Day" refers to all weekdays (Monday through Friday) with the exception of recognized holidays.

9.    "Canteen" refers to the service provided to FDC inmates that allows them to purchase food and other items for consumption and use in their cells.

10.    "Death Row" refers to the area within FDC facilities in which inmates sentenced to death are housed.

11.    "Death Row Inmates" refers to all current and future inmates (regardless of gender) imprisoned on Death Row in the State of Florida.

12.     "Defendants" refers to Ricky D. Dixon, Secretary of the Florida Department of Corrections; Travis Lamb, Warden of Union Correctional Institution; Donald Davis, Warden of

Florida State Prison – in their official capacities, and their successors in office, subordinates, and agents.

13. "Department" and/or "FDC" refers to the Florida Department of Corrections.

14. "Dayroom" refers to a common room on each wing of Death Row containing (a) a table with 3-4 seats, (b) a bench, (c) multimedia kiosks, (d) a fan, and (e) a television.

15. "Effective Date" refers to the date upon which the Court issues an order retaining jurisdiction to enforce this Agreement and dismissing this Action with prejudice. *See* Paragraph 67, below.

16. "Eligible Death Row Inmates" refers to all Death Row Inmates approved by the Institutional Classification Team (ICT) to participate in Dayroom activities and Outdoor Exercise Time based on the criteria governing Death Row Inmates' access to Outdoor Exercise Time under F.A.C. 33-601.830(7)(j)(2)-(3).

17. "Dayroom Area" refers to the area configured to facilitate indoor out-of-cell interaction between Death Row Inmates at certain times as specified in Section III, below. The Dayroom Area includes the walkway directly in front of the cells on the wing, with the exception of Lowell, where there is no such walkway.

18. "Multimedia kiosks" refers to a secure wired and wireless networks kiosk used to sync their tablets, purchase and download available content (such as, eBooks, games, movies, music, news, audiobooks, etc.), and access secure mail at which inmates can access services provided by the contractor.

19. "Make-up Outdoor Exercise Time" refers to opportunities for Death Row Inmates to make up Outdoor Exercise Time that was missed due to mental or physical health appointments, attorney visits, or any other conflict causing the Death Row Inmate to involuntarily miss their

scheduled Outdoor Exercise Time due to anything other than a disciplinary issue. It shall cover the duration of Outdoor Exercise Time that was missed during the conflict.

20.    "Parties" refers to the Plaintiffs and the Defendants in this Action.

21.    "Plaintiffs" refers to the named plaintiffs in this Action, namely, Mark Davis, Mark Geralds, Jesse Guardado, Joseph Jordan, Robert Rimmer, Steven Stein, Jason Stephens, and Gary Whitton.

22.    "Plaintiffs' Counsel" includes Plaintiffs' attorneys in this Action, along with the attorneys' agents (including but not limited to paralegals) and subject matter experts (including but not limited to medical, psychological, and security experts) engaged for the purpose of litigating this Action and enforcing this Agreement.

23.    "Outdoor Exercise Time" refers to the time Death Row Inmates are provided for outdoor exercise and does not include time required to transport Death Row Inmates to and from outdoor exercise.

## III.    <u>IMPROVEMENTS TO CONDITIONS OF CONFINEMENT ON DEATH ROW</u>

24.    Defendants shall implement the following improvements to the conditions of confinement on Death Row no later than **<u>January 1, 2022</u>**, the "Implementation Deadline."

### A.    Out-of-Cell Time

25.    Defendants shall offer all male Eligible Death Row Inmates access to the Dayroom and Dayroom Area at least three (3) hours per Business Day.  Defendants shall use their best efforts to offer all male Eligible Death Row Inmates access to the Dayroom and Dayroom Area for an additional one (1) hour per Business Day for a total of four (4) hours per Business Day.  Defendants shall offer all female Eligible Death Row inmates at Lowell access to the Dayroom and Dayroom Area at least four (4) hours per Business Day.  Defendants shall use their best efforts to offer all

female Eligible Death Row Inmates at Lowell access to the Dayroom and Dayroom Area a) for an additional one (1) hour per Business Day for a total of five (5) hours per Business Day and b) for five and one half (5 ½) hours per weekend day.  Defendants shall separately offer Death Row Inmates six (6) hours of Outdoor Exercise Time per week.

26.     All out-of-cell time offered to be provided under Paragraph 25 shall be offered during normal waking hours (7:00 a.m. to 9:00 p.m.).

27.     The out-of-cell time required by Paragraph 25 shall not be offset or diminished by medical appointments, attorney meetings, classification or disciplinary hearings, court hearings, or visitation time allotted under F.A.C. 33-601.722 (Visiting Schedule), except that where such events conflict with a Death Row inmate's regularly scheduled Dayroom/Dayroom Area time, the Death Row inmate shall be offered, within 30 days of such conflict(s), up to two (2) hours of make-up Dayroom/Dayroom Area time per week. Outdoor Exercise Time offered under Paragraph 25 also shall not offset or diminish the Dayroom/Dayroom Area time offered under Paragraph 25, or vice versa.

28.     If Defendants have reason to believe that the out-of-cell time required by this section has been or will be cancelled or shortened for three or more consecutive days, for either an individual wing or all of Death Row, the warden of the institution will promptly notify their respective Regional Director via email or other written form and will explain the circumstances resulting in the cancellation, the steps taken to resolve the issue resulting in the cancellation, and an estimated timeline for resuming compliance with this section. The provision of written notice required in this Paragraph does not excuse Defendants from their obligation to comply with the out-of-cell time requirements in this section.

29.     The Dayroom Area shall consist of the walkway directly in front of the cells, except at Lowell, where there is no such walkway, and a dayroom consisting of an unused cell with (a) a table, with 3-4 seats, (b) a bench, (c) a multimedia kiosk, (d) a fan, and (e) a television.

30.     A telephone shall be available for use by Death Row Inmates during the time that they are offered access to the Dayroom and Dayroom Area.

31.     During the time that they are offered access to the Dayroom Area, Death Row Inmates shall be permitted to:

      a.   Use the Dayroom;

      b.   Participate in congregate activity in the Dayroom, including eating with others in the Dayroom for whatever meal is served during their Dayroom time;

      c.   Use the multimedia kiosk in the Dayroom; and

      d.   Use the telephone.

32.     During the time that they are offered access to the Dayroom Area, Death Row Inmates shall be permitted to freely come and go from their own cells and remain in the hallway outside the cells, with the exception of Death Row Inmates at Lowell, where the Dayroom will not be adjacent to the cells and there is no hallway in front of the cells and thus such movement is not possible.

33.     Death Row Inmates at Lowell shall have access to a shower on the days that they are provided access to the Dayroom, and the time they spend showering shall not conflict with or diminish the time they are permitted to be in the Dayroom.  All other Death Row Inmates will be permitted access to the shower adjacent to the hallway outside the cells during the time that they are offered access to the Dayroom Area.

34.     FDC will install a shade cloth for each outdoor recreation area of at least sixty (60) square feet.

35.     During Outdoor Exercise Time, Death Row Inmates shall have access to water.

36.     During Outdoor Exercise Time, Death Row Inmates shall be permitted to use available toilet facilities, and 1) Death Row Inmates shall not be required to spend more than 15 minutes in transit to those facilities and back, and 2) Death Row Inmates shall not be required to forfeit their remaining scheduled Outdoor Exercise Time after using those facilities should such time remain, except that if extenuating circumstances arise that prevent an inmate from returning to Outside Exercise Time, Defendants are permitted to instead provide Make-up Outdoor Exercise Time in lieu of such remaining Outdoor Exercise Time, in accordance with Paragraph 35.

37.     When Outdoor Exercise Time is cancelled due to inclement weather, security incidents, emergencies, or security staffing issues, FDC will schedule make up time during Monday through Friday, excluding weekends and holidays.   Make-up Outdoor Exercise Time shall be offered as an alternative within a reasonable time not to exceed 30 days.  This provision supplements 33-601.803(j), F.A.C., and does not supersede it.

**B.     Work Assignments**

38.     Death Row Inmates who are eligible and approved by ICT shall be assigned a job within the death row housing unit such as cleaning the showers, Dayroom and hallway or serving food, and shall be governed by Rule 33-601.201, F.A.C.  Once a job is accepted by a Death Row inmate, he or she is subject to Rule 33-601.314 for refusing to work, and may be subject to discipline, including, but not limited to, loss of work privileges.

39.     Time the Death Row Inmates spend performing Work Assignments shall not qualify as any part of the out-of-cell time required by Paragraph 25.

### C.    Mental Health Care

40.    Mental health care, including psychiatric care, for Death Row Inmates, shall be rendered in accordance with FDC policy requirements applicable to all inmates.

41.    Inmate-declared psychological emergencies, emergent staff referrals, suicide and self-injury risk assessments, and implementation of precautions and treatment, as clinically indicated, will be provided in accordance with FDC policy requirements applicable to all inmates.

42.    Defendants agree that Death Row Inmates' mental and physical health records and/or any communications, observations or diagnoses by mental and physical healthcare providers are confidential and any disclosure by FDC without a valid "Consent and Authorization for Use and Disclosure Inspection and Release of Confidential Information, form DC4-711B" by the Death Row Inmate or court order is strictly forbidden.

### D.    Movement-Related Use of Restraints and Strip Searches

43.    Death Row Inmates shall not be subjected to strip-searching or to shackling, tethering, or other physical restraints when moving about within the unit during Dayroom activities, unless legitimate and documented penological interests necessitate such actions. Documentation shall be made on an inmate's DC6-229.

## IV.    IMPLEMENTATION, MONITORING, AND ENFORCEMENT

### A.    Implementation

44.    Within 60 days of the Effective Date of this Agreement, Defendants shall provide Plaintiffs with a written plan specifying the time and manner in which each provision of Section III of this Agreement (24-41) shall be implemented ("Implementation Plan").

45.    The Implementation Plan shall include, but not be limited to:

      a.     A schedule reflecting the times each week that Eligible Death Row Inmates will be offered the out-of-cell time required by Paragraph 25.

      b.     A summary of FDC's offerings for Work Assignments; and

      c.     FDC's budget proposal to the Florida Legislature to enable the FDC to meet its obligations under this Agreement.

46.    Defendants will make all reasonable efforts to implement the provisions in Section III of this Agreement as soon as possible without awaiting the provision of additional funding from the Florida Legislature.

47.    In no event shall the period of implementation extend past the Implementation Deadline. All Death Row facilities shall be in full compliance with this Agreement by the Implementation Deadline or any extensions thereof.

48.    Should any provision of the Implementation Plan conflict with a provision of this Agreement, the provision of this Agreement shall control.

49.    Within 90 days of the Effective Date of this Agreement, Death Row Inmates shall be provided a copy of this Settlement Agreement and a notice, mutually approved by all Parties, informing them of the terms of the Implementation Plan. Full copies of the Implementation Plan shall be provided to any inmate who requests them.

50.    Defendants shall issue regulations that reflect and implement the requirements in Section III of this Agreement no later than the Implementation Deadline.

**B.    Inspection, Access, and Communications**

51.    Plaintiffs' Counsel will be permitted to conduct up to four (4) visits per calendar year, onsite compliance assessments during the period that the Court retains jurisdiction. Each visit will be of a reasonable duration determined by Plaintiffs' and Defendants' counsel as necessary to

adequately assess compliance.  All onsite visits will take place on specific dates and times mutually agreed upon by the Parties. Legal visits by Plaintiffs' Counsel must follow existing rules.

52.   During the term of this Agreement, subject to security protocols and FDC rules, Plaintiffs' Counsel will have access to Death Row and any other areas of FDC facilities to which Death Row Inmates have access for the purpose of assessing compliance with the terms of this Agreement.  Plaintiffs' Counsel shall be permitted to observe daily and routine operations of Death Row, including conditions and activity in Dayroom Areas, Outdoor Exercise Time, Work Assignments, and all other non-emergency events occurring regularly during the time of their visits.  To minimize the disruption to the daily operations of FDC, all cell-front communication shall be limited to 30 minutes per wing. Plaintiffs' Counsel will be escorted by FDC officials during each of the on-site visits. Plaintiffs' Counsel shall provide notice of no less than ten (10) days of their intention to inspect Death Row.

53.   Upon request, Plaintiffs' Counsel will have access to (a) Plaintiffs' security/classification records; (b) Plaintiffs' medical and mental health records, as allowed under state and federal privacy laws upon presentation of a signed medical release; (c) Plaintiffs' logs of out-of-cell activity; (d) FDC, UCI, Lowell, and Death Row policies and standard operating procedures (per the confidentiality agreement); (e) a roster of all current Death Row Inmates, to include name and current wing/phase assignment for each inmate then housed in Death Row; (f) documents regarding failures to offer  out-of-cell time, and (g) any other documents  the parties agree are necessary and relevant to ensure compliance with the Agreement.  Defendants shall provide the requested documents within thirty (30) days of receiving Plaintiffs' Counsel's request, unless the volume or complexity of the request, or other intervening factors, requires more time for production, provided that such additional time may not exceed fifteen (15) days absent the

consent of Plaintiffs' Counsel.  Plaintiffs' Counsel may disclose to their agents and experts any such documents received from Defendants.  No inmate may view confidential or restricted documents.

54.   Plaintiffs' Counsel, agents, and experts shall be entitled to meet with and speak confidentially with all Death Row Inmates. Institutional staff shall facilitate Plaintiffs' Counsel's requests for reasonable access to such individuals without undue delay. Plaintiffs' Counsel and their agents or paralegals shall be permitted contact visits with Death Row Inmates, unless individualized security concerns dictate otherwise.  Confidential visits must be scheduled one (1) week in advance to ensure available space to facilitate such visits.

55.   All visits by Plaintiffs' Counsel shall be in compliance with FDC rules.  All document requests by Plaintiffs' Counsel must be in compliance with state and federal law.  If Defendants refuse a demand by Plaintiffs' Counsel for access to facilities or documents, the Parties may submit their dispute to the Court to resolve whether the request is reasonably calculated to aid in assessing FDC's compliance with this Agreement.

56.   The Defendants shall ensure that Plaintiffs have access to sufficient communication methods to inform Plaintiffs' Counsel of any alleged breach of this agreement.  While inmate complaints or concerns shall remain governed by the Inmate Grievance process in accordance with FAC 33-103, exhaustion of that process shall not be a condition precedent to invoking the dispute resolution procedures in Section IV.C. of this agreement.

### C.     Dispute Resolution for Alleged Breach

57.   If Plaintiffs believe that Defendants have breached one or more provisions of this Agreement, Plaintiffs' Counsel will provide Defendants with a written notice describing the

alleged breach. This notice will identify, with particularity, the basis of the claim that Defendants

are in breach of this Agreement and the specific provision(s) of this Agreement allegedly breached.

58.    Within forty-five (45) calendar days from receipt of the notice, Defendants will

provide Plaintiffs and Plaintiffs' Counsel a written statement responding to the notice. Defendants'

statement will provide either an explanation of Defendants' plans to achieve full compliance with

the specified provision(s) of this Agreement or a full factual explanation as to why Defendants

believe they have not breached the specified provision(s).

59.    Within thirty (30) calendar days of receipt of Defendants' written response, counsel

for the Parties shall confer in a good faith effort to resolve any remaining dispute.

60.    During the period in which the court retains jurisdiction as defined in Paragraph 68,

below, if the Parties are unable to resolve the dispute within thirty (30) days of receipt of

Defendants' written response, Plaintiffs may file a motion or other request for relief with the Court

to enforce the provisions of this Agreement. Any motion will cite the provision(s) at issue and

explain why Plaintiffs contend Defendants are in breach of the provision(s). During the period

after the court retains jurisdiction as defined in Paragraph 68 below, if the Parties are unable to

resolve the dispute within thirty (30) days of receipt of Defendants' written response, Plaintiffs

may file a civil action alleging breach of contract to enforce the provisions of this Agreement.

61.    The Parties understand and agree that the Court will retain jurisdiction of this

Action for the period defined in Paragraph 68 below, such that Plaintiffs will not be required to

file a new action to enforce this Agreement during that period.

**D.    Remedy is for Breach of Contract, not Violation of a Consent Decree**

62.    While the court shall retain jurisdiction pursuant to Section VI below, this

Agreement is not a 'consent decree' and may not be construed as such.  Rather, it is a contractual

'settlement agreement.'  The Parties agree, however, that the Court will have continued jurisdiction to enforce the terms of this Agreement and during the period of the Court's retained jurisdiction.

### E.    Class Certification, Notice, and Joint Motion

63.    The Parties agree that Plaintiffs meet the requirements under Rule 23 of the Federal Rules of Civil Procedure to certify an injunctive class defined as follows: All persons in the State of Florida who have been sentenced to death and are in the custody of the Florida Department of Corrections ("FDC").

64.    By joint motion to be filed no later than five days after the execution of this agreement, the Parties will request that the Court preliminarily approve this Agreement, conditionally certify a class for settlement under Rule 23(b)(2), require that individualized notice of the proposed settlement be sent to class members, provide for an objection period, and schedule a fairness hearing.

65.    Following the close of the objection period, the Parties will jointly request that the Court enter a final order approving this Agreement and retaining jurisdiction to enforce its terms.

66.    If this Agreement is not approved by the Court, the Parties shall be restored to their respective positions in the Action as of the date on which this Agreement was executed by the Parties, the terms and provisions of this Agreement shall have no force and effect, and shall not be used in this Action or in any proceeding for any purpose, and the litigation of this Action shall resume as if there had been no settlement.

## V.    <u>PROHIBITION ON RETALIATION</u>

67.    In accordance with FDC policy and procedure, Defendants shall not retaliate against any Death Row Inmate, including any Plaintiff, for participating in this Action.

68.     In accordance with FDC policy and procedure, Defendants shall not retaliate against any Death Row Inmate or other person because that person has provided information or assistance related to this Agreement to Plaintiffs or Plaintiffs' Counsel.

## VI.    **TERM OF AGREEMENT**

69.     This Agreement shall be effective upon an order from the Court retaining jurisdiction to enforce this Agreement and dismissing this Action with prejudice. The date upon which the Court issues such an order is the "Effective Date" of this Agreement.

70.     Subject to the exceptions in Paragraphs 69 and 70 below, the Court's order retaining jurisdiction over this Agreement shall remain in force until **July 1, 2022**. The terms of this Agreement, however, shall thereafter remain in full force and effect as a contract among the parties, and the parties shall remain entitled to enforce its terms through a separate breach of contract action.

71.     If the Court determines that Defendants have breached one or more provisions of this Agreement at any point during the term of retained jurisdiction, the term of retained jurisdiction shall be deemed extended by an additional six (6) months beyond the expiration date set forth in Paragraph 68.  Under no circumstance shall the Court's retained jurisdiction extend beyond December 31, 2023. This deadline shall not limit the court's power to impose and enforce orders to remediate any breach of the agreement found prior to the termination of the Court's retained jurisdiction.

72.     If at the end of the extended term provided for by the preceding Paragraph, or at the end of any further extension authorized by this paragraph, Plaintiffs have reason to believe that Defendants are in breach of one or more of the material terms of this Agreement, they may petition the Court to extend the term of retained jurisdiction by up to an additional six (6) months.  If the

Court has not found a material breach of this Agreement upon the expiration of any extension, the term of retained jurisdiction shall expire, but such expiration shall not divest the Court of jurisdiction to rule on any motion or petition pending at the time of termination.

## VII.    COMPLIANCE WITH 18 U.S.C. § 3626

73.    The Parties agree that the prospective relief required by this Agreement satisfies 18 U.S.C. § 3626(a)(1)(A) in that the relief is narrowly drawn, extends no further than necessary to correct the violations of federal rights alleged by Plaintiffs, and is the least intrusive means necessary to correct those alleged violations of federal rights. The relief required by this Agreement will not have an adverse impact on public safety or the operation of the criminal justice system, nor will it require or permit government officials to exceed their authority under state or local law, or otherwise violate state or local law.

74.    The prospective relief required by this Agreement shall be terminated only as provided herein and shall be exempt from the termination provisions of 18 U.S.C. § 3626(b) and Rule 60(b) of the Federal Rules of Civil Procedure.

## VIII.    ATTORNEYS' FEES AND COSTS

75.    Defendants will pay Plaintiffs' costs and reasonable attorneys' fees, in an amount of $125,000, in full and complete satisfaction of any and all of Plaintiffs' claims for attorneys' fees and costs up to the Effective Date of the Agreement. The payment shall be made by check and delivered by wire, instructions to be provided by Plaintiffs' Counsel.

76.    Plaintiffs agree not to seek further fees and costs with respect to work incurred prior to the Effective Date. Fees and costs associated with monitoring are covered by the amount agreed upon in Paragraph 73.

77.     If Plaintiffs are the prevailing party in any proceedings to enforce the terms of this Agreement, Plaintiffs shall be entitled to receive reasonable attorneys' fees and costs incurred in connection with those proceedings. Any disputes over fees and costs shall be adjudicated by the Court.

## IX.     GENERAL CONTRACTUAL PROVISIONS

### A.     Release

78.     All claims asserted in the Amended Complaint shall be finally and fully settled and released, subject to the terms and conditions of this Agreement, which the Parties enter into freely, voluntarily, knowingly, and with the advice of counsel. Plaintiffs and class members hereby release Defendants in their official capacities from, and are barred and precluded from prosecuting any claims, causes of action or requests that have been asserted in this litigation, provided that in no event shall this release be deemed to release or otherwise affect in any way any claim regarding any act, incident, or event that occurs after the termination of the Court's retained jurisdiction.

### B.     Warranty of Understanding and Acknowledgement

79.     Plaintiffs and Defendants have carefully read this Agreement, know and understand its contents, and freely and voluntarily agree to all of its terms and conditions.

### C.     Governing Law

80.     The parties agree that, except to the extent any provision is governed by federal law that supersedes state law, this Agreement shall be construed and governed by the laws of the State of Florida.

### D.     Construction

81.     No party shall be considered the drafter of this Agreement, or any provision contained herein, for the purposes of any statute, case law, or rule of interpretation or construction,

that would or might cause any provision to be construed or interpreted as against the drafter. The parties also agree that signed electronic .pdf versions of this Agreement shall have the same force and effect as original copies of the Agreement.

### E.   Headings and Subheadings

82.     Any headings or subheadings used herein are for reference purposes only and do not alter or affect the substantive provisions of the Agreement.

### F.   Entire Agreement

83.     The terms of this Agreement as written constitute the entire agreement between the Parties, and there are no other terms relied upon by the Parties, verbal or otherwise. This Agreement may not be changed or altered in any way except as expressly set forth herein.

### G.   Severability

84.     If any part of this Agreement is or shall be declared invalid or unenforceable by operation of law, or by any tribunal of competent jurisdiction, the remainder of this Agreement shall not be affected thereby, but shall continue in full force and effect. If any provision of this Agreement, or application of such provision to any person or circumstance, shall be held invalid by a court of competent jurisdiction, the remainder of this Agreement, or the application of such provision to persons or circumstances other than to those as to which it is held invalid, shall not be affected thereby unless to do so would destroy the essential purpose of this Agreement.

### H.   Counterparts

85.     This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

### I.      Authorization and Binding Effect

86.     The representatives executing this Agreement on behalf of Plaintiffs and Defendants are empowered to do so and thereby bind Plaintiffs, Defendants named in this lawsuit in their official capacities, and Defendants' successors in office, employees and agents.

### J.      Further Assurances

87.     The Parties agree to take all actions reasonably necessary to effectuate the approval, performance, implementation, validity and enforceability of this Agreement.

### K.      Amendment

88.     The Parties may jointly agree to make changes, modifications, and amendments to the requirements of this Agreement. No such change, modification, or amendment may be made except by an agreement in writing executed by all of the Parties. The Parties must also seek Court approval for any such change, modification, or amendment made during the term of the Court's retained jurisdiction.

### L.      Waiver and Preservation of Remedies

89.     The failure by any Party to insist upon strict performance of any of the terms or conditions of this Agreement shall not be deemed a waiver of any of the rights or remedies that such Party may have, and shall not be deemed a waiver of any subsequent breach or default. To be effective, any waiver with regard to this Agreement must be in writing and signed by the Party granting the waiver, and any such waiver shall apply only to the matter or instance specifically waived.

### M.      Force Majeure Clause

90.     Should a war, riot, fire, flood, hurricane, typhoon, earthquake, lightning, explosion, strike, lockout, pandemic, or prolonged shortage of energy supplies substantially

impede FDC's timely compliance with any of the terms of this Agreement, the Parties agree that the failure to timely comply shall be excused and shall not be considered a failure to meet the terms of the this Agreement. Should any of the events in this paragraph occur and substantially impede timely compliance, FDC shall make reasonable efforts to restore or alternatively achieve compliance as soon as it is possible to do so.  If necessary under this clause, the FDC may seek an extension of jurisdiction in order to comply with this Agreement.

### N.   Agreement Subject to Legislative Appropriations

91.   The Parties recognize that compliance with the terms of this Agreement includes activities extending beyond the current fiscal year, and fiscal year 2021 – 2022. The Parties recognize that the continued compliance with the terms of this Agreement is dependent upon legislative appropriation. FDC will exercise reasonable efforts to secure the legislative appropriations necessary to meet the terms of this Agreement. The inability to perform any act required under the terms of this Agreement due to non-appropriation of funds, so long as those funds are necessary to implement or support compliance with the terms of the Agreement, shall not be deemed to be a significant breach by FDC so long as FDC exercises reasonable efforts to secure the appropriations at issue.  If FDC cannot fulfill any obligation under this agreement based on non-appropriated funds, the Parties may seek an extension of this Agreement. If Defendants do not implement the improvements to the conditions of confinement on Death Row described in this agreement by the "Implementation Deadline" as stated above, Plaintiffs may file for breach of this Agreement with the Court.  The Court shall thereafter hear the parties, determine if a breach of this agreement exists, and fashion an appropriate remedy for any breach it finds.

**O.     Notices**

92.     All notices required under this Agreement will be sent overnight mail or overnight

courier to the following people:


If to the Plaintiffs:

>       Linda McDermott (SBN 102857)
>       20301 Grande Oak Blvd. Suite 118-61
>       Estero, FL 33928
>       Tel. (850) 322-2172
>       Fax. (239) 221-8479
>       lindamcdermott@msn.com

>       and

>       Evan T. Shea
>       VENABLE LLP
>       750 E. Pratt Street, Suite 900
>       Baltimore, MD 21202
>       Tel. (410) 244-7400
>       Fax. (410) 244-7742
>       etshea@venable.com

If to Defendants:

>       Joe Belitzky
>       Office of the Attorney General
>       Corrections Litigation Bureau
>       PL-01 The Capitol
>       Tallahassee, FL 32399-1050
>       Tel: (850) 414-3663
>       Fax: (850) 488-4872
>       Joe.Beltizky@myfloridalegal.com

>       Lance Neff
>       Florida Department of Corrections
>       501 S. Calhoun Street
>       Tallahassee, Florida 32399
>       Office:  850-717-3588
>       Fax:  850-922-4355

lance.neff@fdc.myflorida.com

END OF AGREEMENT
SIGNATURE PAGES FOLLOW

For Plaintiffs

*Linda McDermott*

Linda McDermott (SBN 102857)
20301 Grande Oak Blvd. Suite 118-61
Estero, FL 33928
Tel. (850) 322-2172
Fax. (239) 221-8479
lindamcdermott@msn.com

Evan Shea
Seth Rosenthal
Matthew Shea
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Tel. (410) 244-7400
Fax. (410) 244-7742
etshea@venable.com
sarosenthal@venable.com
mtshea@venable.com

DATED: April 25, 2022_____

For Defendants

Ricky D. Dixon, Secretary
Florida Department of Corrections
501 S. Calhoun Street
Tallahassee, Florida 32399

DATED: APR 2 5 2022 _____

22