## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MARK DAVIS, et al., on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

v.                                    Case No.  3:17-cv-820-MMH-PDB

RICKY D. DIXON, in his official
capacity as an employee of the
Florida Department of Corrections,
et al.,

        Defendants.

_____

## O R D E R

**THIS CAUSE** is before the Court on the Joint Motion for Final Approval

of Class Action Settlement and Memorandum of Law in Support Thereof (Doc.

113; Final Approval Motion), filed on November 12, 2021, and Plaintiffs'

Unopposed Motion for Attorneys' Fees and Costs and Memorandum of Law in

Support Thereof (Doc. 94; Fee Motion), filed on September 9, 2021.  Pursuant

to Rule 23, Federal Rules of Civil Procedure (Rule(s)), the parties request that

the Court finally approve the class action settlement.  <u>See</u> Final Approval

Motion at 1.  In the Fee Motion, Plaintiffs ask the Court to approve an award

of attorneys' fees to Plaintiffs' counsel as provided for in the parties' proposed

settlement.  <u>See</u> Fee Motion at 1-2.  Along with their Motions, the parties filed a fully executed copy of the Settlement Agreement on November 17, 2021.  <u>See</u> Settlement Agreement (Doc. 115-1).[1]  As discussed below, the parties later engaged in supplemental negotiations resulting in slight modifications to the proposed settlement.  <u>See</u> Notice (Doc. 146), filed April 5, 2022.  The fully executed, Final Settlement Agreement is in the record at docket entry 148-1. For the reasons that follow, the Court finds that the Motions are due to be granted and the Final Settlement Agreement approved.

## I.      Procedural History

This action began on July 19, 2017, with the filing of a Class Action Complaint for Declaratory and Injunctive Relief (Doc. 1).  On March 28, 2018, Plaintiffs Mark Davis, Mark Geralds, Jesse Guardado, Joseph Jordan, Robert Rimmer, Steven Stein, Jason Stephens, and Gary Whitton, on behalf of themselves and all others similarly situated, filed the Amended Class Action Complaint for Declaratory and Injunctive Relief (Doc. 41; Amended Complaint), the operative pleading at this time, against Defendants Julie Jones, Kevin Jordan, and Barry Reddish, in their official capacities as

---

[1] Paragraph 2 of the Settlement Agreement contained an error in its description of death row housing for female prisoners.  The Court addressed the issue with the parties at the Fairness Hearing and the parties filed a corrected version of the Settlement Agreement on December 1, 2021.  <u>See</u> December 1, 2021 Letter (Doc. 118), Exs. 1-2.

employees of the Florida Department of Corrections (collectively, the FDC).[2] Plaintiffs are inmates housed in the Death Row unit of Union Correctional Institution (UCI) a Florida state prison.  In the Amended Complaint, Plaintiffs assert that the FDC maintains a policy of "automatic, indefinite solitary confinement for death row inmates."   See Amended Complaint ¶ 3.   As described in the Amended Complaint, the FDC has held Plaintiffs in prolonged solitary confinement on Death Row for almost twenty-four hours a day with extremely limited human interaction and sporadic out-of-cell activity. According to Plaintiffs, they have endured this solitary confinement year after year after year without any opportunity for review and/or relief from the severely harsh long-term conditions. Some Plaintiffs have experienced the conditions of confinement on Death Row for over twenty years.   In the Amended Complaint, Plaintiffs assert that the "devastating psychological and physical effects" of permanent solitary confinement include "a persistent and heightened state of anxiety and nervousness," as well as "obsessive ruminations, confused thought processes, an oversensitivity to stimuli, irrational anger, social withdrawal, hallucinations, violent fantasies, emotional flatness, mood swings, chronic depression, feelings of overall

---

[2] The individuals serving in these positions with the FDC have changed since the filing of the Amended Complaint, such that the current Defendants, in their official capacities, are Ricky D. Dixon, Travis Lamb, and Donald Davis.

deterioration, and suicidal ideation." See Amended Complaint ¶ 73.  Plaintiffs contend that this practice is recognized internationally as a violation of human rights standards and considered to be equivalent to torture.  Id. ¶¶ 79-80.

In this action, Plaintiffs contend that the FDC's policy of permanent solitary confinement for all Death Row inmates constitutes cruel and unusual punishment in violation of the Eighth Amendment, as well as a deprivation of a protected liberty interest without due process of law, in violation of the Fourteenth Amendment.  See Amended Complaint ¶¶ 109, 119.  The FDC denies these allegations.  See Defendants' Answer, Defenses, and Affirmative Defenses (Doc. 76), filed May 6, 2019.  On May 18, 2018, the FDC moved to dismiss the Amended Complaint asserting that Plaintiffs failed to exhaust their administrative remedies and failed to state a claim.  See Defendants' Motion to Dismiss Amended Complaint (Doc. 45; Motion to Dismiss).  The Court denied the FDC's Motion to Dismiss on March 28, 2019.  See Order (Doc. 72).

Following a preliminary pretrial conference, and with the parties' consent, on June 12, 2019, the Court appointed the Honorable Harvey E. Schlesinger, Senior United States District Judge, to act as a mediator in settlement discussions among the parties.  See Order (Doc. 80).  After multiple settlement conferences and extensive negotiations facilitated by Judge Schlesinger over the course of eighteen months, the parties reached a

settlement and, on May 18, 2021, filed a motion for preliminary approval of the settlement.  <u>See</u> Joint Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support Thereof (Doc. 90; Preliminary Approval Motion).[3]  Upon review of the Preliminary Approval Motion and attachments, the Court had questions regarding the relief requested, the proposed class definition, the proposed notice, and some logistics.  As such, the Court set the matter for a hearing at which all parties appeared via Zoom on August 19, 2021.  <u>See</u> Minute Entry (Doc. 92).  Following the August 19, 2021 Hearing, as directed by the Court, Plaintiff filed the Fee Motion.[4]   On September 14, 2021, the Court entered an Order (Doc. 95; Preliminary Approval Order) conditionally certifying the following Settlement Class:

> All persons in the State of Florida who have been sentenced to death and are in the custody of the Florida Department of Corrections ("FDC").

<u>See</u> Preliminary Approval Order at 19.  The Court designated Plaintiffs' counsel as Class Counsel, and preliminarily approved the class action

---

[3] The Court expresses its profound gratitude to the Honorable Harvey E. Schlesinger for his continued service and for his willingness to dedicate his time, talent, and vast experience to mediating the claims in this action.

[4] In accordance with Eleventh Circuit precedent and Rule 23(h), the Court required Class Counsel to file the Fee Motion prior to the class notice and objection period such that class members had all the information necessary to consider the fee request and decide whether to object.  <u>See</u> <u>Johnson v. NPAS Solutions, LLC</u>, 975 F.3d 1244, 1252 (11th Cir. 2020) ("Rule 23(h)'s plain language requires a district court to sequence filings such that class counsel file and serve their attorneys'-fee motion <u>before</u> any objection pertaining to fees is due.").

settlement.  In addition, the Court authorized distribution of a revised class notice (Doc. 95-1; Class Notice) and set forth the procedures and timeframes for the filing of any objections to the settlement.

Following distribution of the Class Notice, the Court received objections from twelve Death Row inmates.  <u>See</u> Statements of Objection (Doc. 97, 100-111), filed October 7, 2021, through November 3, 2021.  One Objection, filed by Michael Bargo, also included a petition with the signatures of forty-two inmates who purport to agree with Bargo's Objections.[5]  Because some of the signatories were also part of the twelve that submitted individual objections, the Court counts, in total, fifty-one male inmates, out of the over three hundred men housed on Death Row, who objected to the proposed settlement.[6]  Two objectors, Michael Bargo and Peter Avsenew, asked to participate in the Fairness Hearing and another, Troy Merck, asked that his counsel be permitted to appear on his behalf.  The Court granted these requests.  <u>See</u> Order (Doc. 114), entered November 15, 2021.

The Court conducted a hearing on November 29, 2021, to determine the fairness, reasonableness, and adequacy of the proposed settlement of this

---

[5] The Court notes that some of the objecting inmates do not fall within the Settlement Class because, although they are housed on Death Row, they are awaiting resentencing and not currently under a death sentence.  Nevertheless, because these individuals will be impacted by the settlement, the Court has considered their objections in determining whether approval is warranted.

[6] The Court will discuss the three women on Death Row separately.

action.  See Minute Entry (Doc. 117; Fairness Hearing).  Class Counsel and counsel for the FDC appeared in person at the hearing.  Id.  Objectors Avsenew and Bargo appeared via Zoom, as did attorney Maria DeLiberato, who appeared on behalf of Merck.  Id.  The Court heard from Class Counsel, the FDC, the two Class Members and attorney DeLiberato.  Following the Fairness Hearing, as directed by the Court, the FDC filed the Declaration of Carl Wesley Kirkland, Jr. to address some of the questions raised at the Hearing.  See Notice of Filing (Doc. 119), filed December 3, 2021.  Thereafter, to ensure the prompt implementation of the settlement, the Court entered an Order (Doc. 12) on December 6, 2021, expressing its intention to approve the settlement and directing Class Counsel to submit a proposed order.  Class Counsel filed the proposed order on December 14, 2021.  See Status Report (Doc. 125).  However, due to an oversight regarding the women on Death Row who are housed at a separate facility, the Court was unable to rule on the Final Approval Motion as promptly as anticipated.  Indeed, at a January 20, 2022 status conference, the Court deferred ruling on the Final Approval Motion to allow the parties to resume negotiations as to the women.  As discussed below, the parties have now resolved that issue and the matter is ripe for review.

## II.   Class Certification & Class Notice

The Court is unaware of any change in circumstances that would alter its previous conclusions regarding class certification.  Thus, the Court will

-7-

finally certify the class for the reasons stated in the Preliminary Approval Order. <u>See</u> Preliminary Approval Order at 6-13.

In addition, Rule 23(e)(2) requires a court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. The Court approved distribution of the Class Notice in the Preliminary Approval Order and the parties notified the Settlement Class accordingly. <u>See</u> Preliminary Approval Order at 14-17; Final Approval Motion at 3-4. As set forth in the Final Approval Motion, the parties "provided the [Class Notice] approved by the Court in both English and Spanish to [the Settlement Class] by, among other things, posting the notice in a prominent area of every wing on [D]eath [R]ow and providing a copy of the notice and Settlement to each individual class member." <u>See</u> Final Approval Motion at 4. Because the parties complied with the agreed-to notice provisions as preliminarily approved by the Court, and given that there are no developments or changes in the facts to suggest that the notice provided as ordered by the Court was in any way inadequate, the Court will finally conclude that the notice provided in this case meets the requirements of Rule 23(e)(1).

## III.   Terms of Settlement Agreement

### A. Generally

The FDC has agreed to ameliorate the conditions of Death Row that led to the automatic, permanent solitary confinement of Death Row inmates.

Pursuant to the parties' settlement, the FDC will allow "Eligible Death Row Inmates"[7] to engage in congregate time outside of their cells in specified ways. In sum, the settlement requires the FDC to:

> offer the Dayroom for congregate activity to all Eligible Death Row Inmates; increase access to showers; furnish Death Row Inmates greater access to multimedia kiosks for inmates to purchase and download available content to their currently available tablets; offer Death Row Inmates increased access to telephones; improve conditions for outdoor exercise; guarantee access to confidential mental health care in accordance with FDC policy applicable to all inmates; and assign qualified Death Row Inmates to Work Assignments as approved by the [Institutional Classification Team].

See Final Settlement Agreement at 2. In particular, Eligible Death Row Inmates will have access to a common room with a table, seating, multimedia kiosks, a fan, and a television (the Dayroom), where they may participate in congregate activity for a specified period of time. See id. at 4-6. Eligible Death Row Inmates will continue to have the opportunity to exercise outside for a total of six hours per week and the FDC will install a large shade cloth for each outdoor recreation area. Id. at 5-7. As additional time outside of their cell, Death Row inmates who are eligible and approved by the ICT will be assigned a job within the Death Row housing unit. Id. at 7. The settlement also requires

---

[7] The Institutional Classification Team (ICT) will determine the eligibility of Death Row inmates based on the criteria set forth in Florida Administrative Code (FAC) § 33-601.830(7)(j)(2)-(3). See Agreement at 3. Generally, this provision restricts an inmate's eligibility due to the commission of a major rule violation or other serious wrongdoing such as assault, murder, or attempted escape. See FAC § 33-601.830(7)(j)(2)-(3).

that Death Row inmates have access to mental health care, including psychiatric care.  Id. at 8.  The parties agreed to detailed terms for the implementation, monitoring, and enforcement of the settlement.  See id. at 8-13.  These terms include an implementation deadline of January 1, 2022, and specify that the Court will retain jurisdiction to enforce the settlement until July 1, 2022.  See id. at 14.  The FDC also agreed to pay attorneys' fees and costs in the amount of $125,000 to Plaintiffs' counsel.  See id. at 15.  In exchange for these policy changes, Plaintiffs and Class Members will release the FDC from "any claims, causes of action or requests that have been asserted in this litigation . . . ."  Id. at 16.

**B. Women on Death Row**

After entry of the Preliminary Approval Order and during the objection period, Class Counsel notified the Court that although the settlement includes the women housed on Death Row in Florida, some of its terms will not apply to them due to differences in the housing arrangements at their facility of incarceration.  See October 6, 2021 Letter (Doc. 99).  Specifically, Class Counsel explained that the female Death Row inmates are housed in Lowell Annex which has a different layout than UCI where the men are housed.  At Lowell, the dayroom is not adjacent to the cells such that the women will not have access to a hallway during dayroom time and may not move freely to and from their cells.  Id.  In addition, because the showers used by female death row

-10-

inmates are not adjacent to the dayroom or their cells, the women will not have access to a shower during their dayroom time like the men do.  Id.  Because the original settlement agreement did not accurately reflect these differences, the Court instructed the parties to file a corrected settlement agreement.  The parties complied and the changes are shown in a redline version of the settlement attached to the Final Approval Motion.  See Final Approval Motion, Ex. 2.  At the Fairness Hearing, Class Counsel represented to the Court that he had informed the three women about these corrections.  Although the women had not submitted objections during the objection period, Class Counsel informed the Court that the women do object to the settlement—particularly the fact that because the dayroom is not adjacent to their cells, the women must be transported to and from their dayroom in restraints.

Following the Fairness Hearing, the Court received letters from all three women on Death Row expressing their concerns about the settlement as it applies to them.  Upon review of these letters, the Court found it necessary to hold a hearing with the women to discuss their concerns.  See Order (Doc. 134), entered January 5, 2022.  On January 20, 2022, the Court held a status conference at which representatives from the FDC, defense counsel, Class Counsel and the three female prisoners appeared via Zoom.  See Minute Entry (Doc. 139).  Based on the representations at the status conference, the Court deferred consideration of the Final Approval Motion and directed the parties

to confer and attempt to resolve the discrepancies in how the settlement applies to the women at Lowell Annex. In the months that followed, the parties visited Lowell Annex and engaged in further negotiations. With the assistance of Judge Schlesinger, the parties reached a resolution of the matter and filed an amended settlement agreement on April 5, 2022. See Notice (Doc. 146). The Court discussed the changes with the parties at a status conference on April 8, 2022, at which time Class Counsel represented to the Court that the three female Death Row inmates are satisfied with the resolution and withdraw their objections to the settlement. Id.

### C. Implementation

As stated above, the terms of the settlement required the FDC to implement the agreed-upon improvements no later than January 1, 2022. See Final Settlement Agreement at 4. Although the Court was unable to finally approve the settlement by that date in light of the issues that arose regarding Lowell Annex, the FDC represented to the Court that it could and would proceed with implementation regardless. Nevertheless, the Court has heard from inmates who complain that the FDC is failing to meet that deadline. See, e.g., Doc. 126, Doc. 135, Doc. 143. The Court addressed the status of implementation with the parties at status conferences in January, February, and April. See Minute Entries (Docs. 139, 142, 147).

Significantly, at the status conference on February 2, 2022, the FDC informed the Court that although renovations were in progress, it would be unable to implement the full terms of the settlement until mid-April. The Court discussed with the parties whether some interim relief could be provided to the Class while renovations were ongoing but given various security concerns, the contours of such relief could not be established at the status conference. As such, and with the agreement of the parties, rather than order interim relief, the Court expressed its intention to extend the implementation deadline to May 9, 2022. However, to ensure that the Class Members receive the full benefit of the settlement, the Court also stated that it would extend its retention of jurisdiction over the enforcement of the settlement to November 9, 2022.[8] With these modifications, the Court will now address the fairness and adequacy of the Final Settlement Agreement.

## IV.   Fairness and Adequacy of the Settlement

### A. Standard of Review

It is well established that settlements are "'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" Miller v. Rep. Nat'l. Life Ins. Co.,

---

[8] The Court directed Class Counsel to inform the Class Members that despite the delays, the case was proceeding and to expect full implementation in May. In addition, the Court expressed its strong preference that the FDC begin to allow out-of-cell time in some capacity as soon as possible.

559 F.2d 426, 428 (5th Cir. 1977) (quoting <u>Pearson v. Ecological Science Corp.</u>, 522 F.2d 171, 176 (5th Cir. 1975)).  A district court, in reviewing a proposed settlement of a class action case must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable."  <u>See</u> <u>id.</u> at 428; <u>see also</u> <u>Bennett v. Behring Corp.</u>, 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2). The Eleventh Circuit has previously outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable:

    (1)    the likelihood of success at trial;

    (2)    the range of possible recovery;

    (3)    the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;

    (4)    the complexity, expense and duration of the litigation;

    (5)    the substance and amount of opposition to the settlement; and

    (6)    the stage of the proceedings at which the settlement was achieved.

<u>See</u> <u>Bennett</u>, 737 F.2d at 986.  In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," is "hesitant to substitute its own judgment for that of counsel."  <u>See</u> <u>Canupp v. Liberty Behavioral Health Corp.</u>, 417 F. App'x 843, 845 (11th Cir. 2011) (citing <u>Cotton v. Hinton</u>, 559 F.2d 1326, 1330 (5th Cir. 1977)).  In addition, effective December 1, 2018, Rule 23 itself was amended to add a mandatory but non-exhaustive set of similar final approval criteria:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2). For the reasons discussed below, the application of these factors, as well as the analogous Bennett factors, leads the Court to conclude that the proposed settlement is fair, adequate, and reasonable under the circumstances of this case.

### B. Analysis

#### i. Adequate Representation & Arm's Length Negotiations

Pursuant to Rule 23(e)(2)(A) and (B), when evaluating whether to approve a class settlement, the Court must consider whether "the class representative and class counsel have adequately represented the class," and whether "the proposal was negotiated at arm's length." As previously addressed in the Preliminary Approval Order, the Court finds that the Class is represented by adequate counsel. See Preliminary Approval Order at 10-11.

The Court's preliminary determination is further confirmed by Class Counsel's conduct since that time in effectuating notice to the Settlement Class, preparing the Final Approval Motion, appearing at the Fairness Hearing, and addressing the issues that arose after the Fairness Hearing.  Moreover, the Court is satisfied that Class Counsel "had an adequate information base" before negotiating and entering the settlement in light of the discovery and motion practice that preceded the settlement.[9]  See Adv. Comm. Note for the 2018 Amend. to Rule 23(e)(2).  As such, the Court remains satisfied that the Settlement Class is represented by adequate counsel.[10]

In addition, the Court finds that the settlement was achieved through arm's-length negotiations.  As stated in the Preliminary Approval Order, the parties negotiated extensively for more than eighteen months to reach a compromise, and their negotiations were mediated throughout by Judge Schlesinger.  See Preliminary Approval Order at 13-14.  The Court is confident that the involvement of Judge Schlesinger in those negotiations ensured that

---

[9] To the extent Class Counsel did not have adequate information regarding the differences in the housing arrangements for the women on Death Row, the oversight was remedied by their on-site visit to the women's facility and the supplemental negotiations after the Fairness Hearing.

[10] In making this determination, the Court carefully considered the objections of several Class Members regarding a lack of communication from Class Counsel.  The Court heard from Class Counsel on this issue at the Fairness Hearing and the Court is satisfied that Class Counsel adequately took into consideration communications from the Class Members and responded to those inquiries from Class Members that required a response.

"they were conducted in a manner that . . . protect[ed] and further[ed] the class interests." See Adv. Comm. Note for the 2018 Amend. to Rule 23(e)(2). Accordingly, the Court finds that the settlement was the product of arm's-length, good faith negotiations and not the result of fraud or collusion.

### ii. Adequacy of the Relief

Next, the Court must consider whether the relief provided for the Settlement Class is adequate, taking into account:

> (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(2)(C). Notably, several of the Bennett factors also address the "costs, risks and delay of trial and appeal," by weighing the likelihood of success and range of possible recovery for the class at trial, measured against the trial's anticipated complexity, cost and duration. Bennett, 737 F.2d at 986. Nevertheless, "[i]t is not necessary to try the merits of the case in connection with reviewing the settlement." Elkins v. Equitable Life Ins. Co. of Iowa, No. CivA96-296-Civ-T-17B, 1998 WL 133741, at *25 (M.D. Fla. Jan. 27, 1998) (citing In re Corrugated Container Antitrust Litig., 643 F.2d 195, 212 (5th Cir. April 3, 1981)). "Thus, the Court can limit its inquiry to determining 'whether the possible rewards of continued litigation with its risks and costs are

outweighed by the benefits of the settlement.'" Id. (quoting Ressler v. Jacobson, 822 F. Supp. 1551, 1553 (M.D. Fla. 1992)).

The costs, risks and delay of trial and appeal in this action are substantial.  Absent settlement, the Court expects that this matter would continue in litigation for years, likely with Class Members remaining in solitary confinement all the while.  Indeed, if this case is reopened for further litigation, the parties will need to engage in extensive additional discovery and motion practice, including class certification and summary judgment motions. If Plaintiffs' claims survive summary judgment, they would then be required to prove their claims at a bench trial, necessitating lengthy testimony from inmates, as well as medical and penological experts.  Class Members would then face further delay as the Court prepared findings of fact and conclusions of law and, even if the Court ruled in their favor, additional delays through the appeal process.

Aside from the substantial cost and delay, Class Members also face significant risks from further litigation.  Of course, there is always the risk that Class Members might not prevail on their claims.  Indeed, Class Counsel represents that the constitutional questions at issue in this case are matters of first impression in the Eleventh Circuit.  However, even if Class Members were to prevail on the issue of liability, they would also be required to establish entitlement to their desired remedies.  The Court recognizes that nearly every

-18-

objecting Class Member identified additional benefits that he wanted from the settlement such as more visitation, more out-of-cell time, a larger outdoor shade, and air conditioning for their cells.  Although some Class Members may believe it worthwhile to endure the substantial delay and risk of proceeding through trial to try and achieve such benefits, the Court bears significant doubts about whether Class Members would be able to recover the additional benefits they seek given the limitations of the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626.  Under the PLRA, even were Class Members to prevail, the Court could impose injunctive relief only that is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  <u>See</u> 18 U.S.C. § 3626(a)(1)(A).  Given this limitation on the range of possible recovery, the Court is convinced that the relief provided by the settlement outweighs the potential for any further benefits from continued litigation.  Thus, this factor weighs in favor of approving the settlement.

### iii.  Equitable Treatment of Class Members

The Court also finds that the Final Settlement Agreement "treats class members equitably relative to each other."  <u>See</u> Rule 23(e)(2)(D).  The Final Settlement Agreement satisfies this factor as it provides for injunctive relief that, generally, applies equally to all Death Row inmates.  Although the settlement terms do differentiate in some respects between male and female

Death Row inmates, this is based on unavoidable differences in their housing arrangements.  The Court is convinced that the modified terms set forth in the Final Settlement Agreement which account for these differences strike a fair balance.  Because the Court is satisfied that the Final Settlement Agreement treats Class Members equitably relative to each other, this factor weighs in favor of approval.

### iv. Substance and Amount of Opposition to the Settlement

"In determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an important factor." Lipuma v. Am. Express Co., 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).  A low percentage of objections demonstrates the reasonableness of a settlement.  Id.  Here, fifty-one of the over three hundred men on Death Row indicated their objection to the settlement, either by filing an objection or signing Bargo's petition.  While this level of opposition to the settlement is not insignificant, it bears recognizing that most inmates did not object.  As to the substance of the opposition to the Settlement, the Court has carefully considered the written Objections as well as the arguments presented by Bargo and Avsenew at the Fairness Hearing.[11]  Although not without some merit, for the reasons that

---

[11] The Court notes that two inmates, Ronald Wayne Clark, Jr. and Donald Otis Williams, also submitted various filings after the Fairness Hearing which set forth further objections to the Settlement Agreement.  See Motion to Correct the Declaration of Carl

follow, the Court is nevertheless convinced that the Objections are due to be overruled and the Final Settlement Agreement approved.

Most commonly, the Objectors to the settlement seek additional improvements in the conditions of their confinement—more out-of-cell time, increased visitation, air-conditioned cells, and access to educational programs, to name a few.[12]  Indeed, several Objectors expressed the view that Death Row

_____

Wesley Kirkland, Jr (Doc. 126), filed on December 16, 2021, and construed as a notice, Endorsed Order (Doc. 132); Motion to Show Noncompliance with 33-601.830(7)(J) (Doc. 127) filed December 20, 2021; Second Motion to Show Cause of Noncompliance (Doc. 131), filed December 27, 2021; Notice to the Court (Doc. 143), filed February 8, 2022; see also Motion for Leave of Court and, Motion for Reconsideration and, or, Motion to Stay Final Approval Order and, Motion for Order Allowing Petition for Writ of Prohibition to be Sought in Court of Appeals (Doc. 129), filed December 23, 2021.  Although untimely, the Court has considered these objections as well.

To the extent Clark seeks affirmative relief from the Court based on the FDC's purported noncompliance, Clark's Motions are due to be denied as they are not properly before the Court at this time.  Significantly, the Final Settlement Agreement contains specific provisions for the resolution of an alleged breach which must be complied with prior to the filing of a motion with the Court.  See Final Settlement Agreement, Part C. As discussed at the April 8, 2022 Status Conference, see Minute Entry (Doc. 147), Class Counsel is monitoring allegations of noncompliance and will bring such matters to the Court's attention if and when appropriate.  To the extent Clark argues that the FDC has violated the Florida Administrative Code separate from the settlement, he must seek relief for such violations in the ordinary course by exhausting any relevant administrative procedures and filing a separate lawsuit.

As to Williams' request for reconsideration, a stay of this Order, and leave to file a writ of prohibition, these requests are due to be denied.  Williams argues that the Court should not approve the settlement because he is not currently under a death sentence and is afraid of intermingling with prisoners who are.  However, as noted below, out-of-cell time is optional, and Williams may decline to participate if he so chooses.  The Court has considered Williams' arguments and, as set forth in this Order, finds that the settlement is fair and adequate and due to be finally approved.  Williams' speculation that Death Row inmates may harm him or others if given the opportunity is not a basis to reject the settlement given that only those inmates who meet certain eligibility requirements will be provided out-of-cell time and work assignments.

[12] The Court notes that some of the issues identified by the inmates in their Objections are beyond the scope of this lawsuit.  For example, this lawsuit does not address the discrepancy in the amount of visitation hours provided to Death Row inmates as opposed to

inmates are no more dangerous than prisoners serving sentences of life without parole and should be held under similar conditions.[13]  While their position is not entirely unreasonable, the Court determines that these objections do not warrant rejecting the settlement.

At the Fairness Hearing, Class Counsel explained that they pressed for additional relief during negotiations but ultimately had to compromise to achieve the substantial relief that the settlement does provide.  Indeed, the settlement negotiations in this case continued for well over a year, with the assistance of a skilled mediator, such that it is unlikely further relief could be achieved through additional negotiations.   And, as discussed above, Class Members face substantial hurdles in achieving their desired outcomes through further litigation.   As such, the Court is satisfied that the settlement represents a fair compromise, even if the Class Members understandably may have hoped for more.  The settlement provides substantial improvements to

---

other prisoners, or the legality of the FDC's decision to keep inmates on Death Row who are awaiting resentencing.  Likewise, the claims in this case do not encompass the lack of air conditioning on Death Row.  As such, the Court does not view these issues as a basis for rejecting a settlement designed to alleviate the FDC's solitary confinement practices. Moreover, because these other matters were not part of the claims in this case, if any Class Member seeks to challenge these policies in a future lawsuit, the Court does not view such claims as waived under the Settlement Agreement's release.

[13] Like Williams, a few other Objectors oppose the settlement because they are afraid of the other inmates and do not want out-of-cell time.  However, this concern does not warrant rejection of the settlement because, as noted previously, the out-of-cell time granted to the inmates on Death Row is optional.

the conditions of confinement and alleviates the core concern of this lawsuit—the automatic and indefinite solitary confinement of Death Row prisoners.

Several Objectors also expressed concern about the enforcement of the settlement and whether the FDC would comply with its obligations. Such concerns are not without foundation given the FDC's failure to meet the original implementation deadline. Nevertheless, the Court has conducted several status conferences with representatives of the FDC, defense counsel and Class Counsel on the status of implementation. Despite the delays, the Court is convinced that the FDC is working in good faith to meet its obligations under the settlement. And, as discussed above, the Court is extending its retention of jurisdiction over this action in light of these delays to ensure that the settlement is fully implemented prior to the expiration of Court oversight.

Moreover, the Court is satisfied that the settlement includes adequate review and enforcement mechanisms in the event the FDC does fail to meet its obligations. The settlement provides access to Class Counsel to monitor the FDC's compliance, includes a period of Court oversight, and can be enforced through a breach of contract action after this Court's jurisdiction expires. Class Counsel has assured the Court that they will continue to review and monitor allegations from the inmates regarding the FDC's compliance with the settlement, or lack of compliance. The Court is confident that Class Counsel is ready, willing, and able to address any material instances of noncompliance

with the FDC and bring such matters to the Court's attention if warranted. Thus, the Objectors' concerns regarding noncompliance do not warrant rejection of the Settlement.  See Gumm v. Ford, No. 5:15-CV-41 (MTT), 2019 WL 2017497, at *10 (M.D. Ga. May 7, 2019) (explaining that the noncompliance objections to a class action settlement in a similar case do not provide a basis for rejecting the settlement because the court can address any failure to comply if necessary).

Many of the Objectors also expressed displeasure with the terms of the release.  However, the Court finds the language of the release to be appropriate here in that it is carefully tailored to include only those claims raised in this action.  Thus, contrary to the concerns expressed by some Objectors, the release does not prevent any Class Member from bringing a lawsuit based on new events or a change in the conditions on Death Row.  Indeed, the release expressly states that it shall "in no event . . . be deemed to release or otherwise affect in any way any claim regarding any act, incident, or event that occurs after the termination of the Court's retained jurisdiction."  See Final Settlement Agreement at 16.  And, as noted above, to the extent the Objectors raise concerns with the conditions of their confinement that are outside the scope of this lawsuit, the release does not prevent them from bringing a separate lawsuit challenging those policies or conditions.  Given its limited

scope, the Court is not persuaded that the objections to the release warrant rejection of the Settlement.[14]

Having considered all the applicable factors, the Court concludes that the proposed settlement is fair, adequate, reasonable and that its approval is in the best interest of the parties.

## V.   Attorneys' Fees

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Here, the FDC agreed to pay Class Counsel $125,000 in attorneys' fees and costs as part of the settlement. See Final Settlement Agreement, Part VIII. However, the Court "is not bound by the agreement of the parties as to the amount of attorneys' fees." See Piambino v. Bailey, 610 F.2d 1306, 1328 (5th Cir. 1980). Rather, the Court has an independent responsibility to "assess the reasonableness of attorneys' fees proposed under a settlement of a class action . . . ." See id. This duty applies regardless of whether the fees are paid from a common fund settlement or otherwise. See Rule 23(h), adv. comm. notes, 2003 amend.; see also Strong v. BellSouth Telecomms., Inc., 137 F.3d 844, 849-50 (5th Cir. 1998).

---

[14] To the extent some Class Members object to their inability to opt out of the Settlement, this Objection is also unavailing. As explained in the Court's Preliminary Approval Order, because the Class is certified under Rule 23(b)(2), Class Members do not have the ability to opt out of the Class. See Preliminary Approval Order (Doc. 95) at 11-12, 14-15.

        In support of their request for approval of the attorneys' fees and costs
award, Class Counsel submits the Declaration of Evan T. Shea (Doc. 94-1)
along with detailed billing records (Doc. 94-2).  The Court has reviewed the
materials presented by Counsel and the record in this case.  Class Counsel's
records indicate that, prior to the beginning of mediation in July 2019, they
spent over two thousand hours on this matter.   Based on the $125,000
requested, this results in an effective hourly rate for the myriad partners,
associates, paralegals and others that worked on this matter of around
$60/hour.  And significantly, these numbers do not account for the substantial
additional time Class Counsel spent working on this case after reaching the
proposed settlement, including preparation of the Preliminary and Final
Approval Motions, appearance at the Fairness Hearing and numerous status
conferences, as well as engaging in the supplemental negotiations.  The Fee
Motion also does not factor in any of the costs incurred in this action.  As such,
it is evident that the $125,000 award requested represents only a small
fraction of the fees and expenses incurred from Class Counsel's efforts in this
matter.[15]  In light of the substantial time and expense necessary to litigate this
matter, the result obtained for the Settlement Class, and the skill necessary to

_____

        [15] The Court expresses its appreciation to Class Counsel for their willingness to take
on this difficult case and the diligence with which they have pursued the matter.  Class
Counsel undoubtedly could have pursued far more lucrative work in the thousands of hours
they spent on this case and their service here is to be commended.

perform the legal service properly, the Court is convinced that the overall amount of attorneys' fees requested by Class Counsel is imminently reasonable, fair and proper. Accordingly, the Court will grant the Fee Motion and approve the $125,000 award in attorneys' fees and costs.

## VI.  Conclusion

Upon consideration of the Final Approval Motion, the arguments presented at the Fairness Hearing, as well as all matters of record, the Court finds that the Settlement Agreement is fair, reasonable, and adequate to warrant final approval. Thus, the Court determines that it is appropriate to grant the Final Approval Motion.[16]  In addition, the Court finds that the $125,000 fee award as provided for in the Final Settlement Agreement is entirely reasonable under the circumstances of this case and will grant the Fee Motion accordingly. In light of the foregoing, it is

**ORDERED:**

1. The Joint Motion for Final Approval of Class Action Settlement and Memorandum of Law in Support Thereof (Doc. 113) is **GRANTED**. The Court finally approves the terms of the Settlement Agreement as a fair, reasonable, and adequate resolution of the dispute between the parties.

---

[16] The Court notes that the FDC has complied with the notice requirements of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715. See Notice of Compliance (Doc. 98) (stating that Defendants sent the requisite notices on October 4, 2021).

2.   The Court, having found that Plaintiffs have met the prerequisites to class certification set forth in Rule 23, Federal Rules of Civil Procedure, finally certifies, for purposes of settlement only, the Settlement Class defined as follows:

> All persons in the State of Florida who have been sentenced to death and are in the custody of the Florida Department of Corrections ("FDC").

3.   The members of the Settlement Class are identified on the List of Class Members (Doc. 113-3) attached to the Final Approval Motion as Exhibit 3.

4.   The Court finds that adequate notice of the settlement was provided to the Settlement Class in a reasonable manner and as directed in the Preliminary Approval Order.   The notice constituted the best notice practicable under the circumstances, was reasonably calculated to apprise Settlement Class Members of the pendency of this action, the terms of the settlement, and their right to object to or comment on the settlement, and satisfied the requirements of Rule 23 and due process.

5.   Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs and Memorandum of Law in Support Thereof (Doc. 94) is **GRANTED**.   The Court awards Class Counsel $125,000 as attorneys' fees and costs and directs distribution of this amount to Class Counsel in accordance with the terms of the Final Settlement Agreement.

6.  The Court expressly **retains jurisdiction** over this action, all members of the Settlement Class, and Defendants, as provided in the Final Settlement Agreement, and therefore, for as long as it retains jurisdiction, the Court shall oversee, and may decide all matters relating to the administrative, implementation, interpretation, and enforcement of the Final Settlement Agreement and this Final Approval Order.

7.  As to all Class Members, the Final Settlement Agreement is **MODIFIED** as follows:

    a.  The Implementation Deadline set forth in paragraph 24 of the Agreement is extended to **May 9, 2022**.  Failure to implement the agreed-upon improvements to the conditions of confinement on Death Row by this date will constitute a breach of the Agreement.

    b.  The date specified in paragraph 70 of the Agreement for the termination of the Court's jurisdiction over this action is extended to **November 9, 2022**.

8.  The objections to the settlement filed by Class Members and other Death Row inmates are **OVERRULED**.

9.  The parties are directed to carry out their respective obligations as agreed upon in the Final Settlement Agreement and in accordance with this Final Approval Order.

10. The Motion to Show Noncompliance with 33-601.830(7)(J) (Doc. 127); Second Motion to Show Cause of Noncompliance (Doc. 131); and Motion for Leave of Court and, Motion for Reconsideration and, or, Motion to Stay Final Approval Order and, Motion for Order Allowing Petition for Writ of Prohibition to be Sought in Court of Appeals (Doc. 129) are **DENIED**.

11. This case is **DISMISSED** and the Clerk of the Court is **directed** to terminate all pending motions as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on April 28, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record
The Honorable Harvey E. Schlesinger
        Senior United States District Judge